**Edward N. O'LEARY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3466.**

Supreme Court of Alaska.

Dec. 28, 1979.

---

Paul L. Davis, Terry C. Aglietti, Edgar Paul Boyko & Assoc., Anchorage, for appellant.

Patrick J. Gullufsen, Asst. Atty. Gen., Daniel W. Hickey, Chief Pros., Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

Following a jury trial Edward N. O'Leary was found guilty of negligent homicide. O'Leary appeals his conviction on the grounds that the trial court erred in refusing to permit the jury to consider his insanity defense, in refusing to give certain requested instructions, and in admitting the testimony of two particular witnesses. We find no reversible error and therefore affirm the judgment of the superior court.

### I. Statement of the Facts

On March 4, 1976, O'Leary spent the evening drinking with friends in a Fairbanks bar. After leaving the bar, O'Leary drove his pick-up truck onto the wrong side of Airport Way, a divided highway, where he collided head-on with another pick-up truck. Wilma Sterling Wallace, the driver of the other truck, was killed in the crash. After the accident O'Leary was taken by ambulance to a hospital where a blood sample was extracted. Testing indicated that, at the time the sample was taken, O'Leary had a blood alcohol concentration of .182% by weight of alcohol.[1] On April 13, 1976, O'Leary was indicted for negligent homicide under AS 11.15.080.[2] The parties stipulated to the facts surrounding the collision, and the evidence at trial related primarily to O'Leary's alcoholism and its effect on his state of mind.

### II. Insanity Defense

At trial O'Leary attempted to raise the defense of insanity.[3] After an extensive offer of proof, the trial court refused to permit the jury to hear the proffered testimony and refused to instruct on the defense of insanity.[4]

Alaska's insanity statute, AS 12.45.083,[5] provides in subsection (a): "A person is not responsible for criminal conduct if at the time of the conduct, as a result of mental disease or defect, he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." O'Leary's theory is that, due to the effect of his chronic alcoholism, his intoxication was involuntary and he consequently lacked the "substantial capacity" referred to in the statute.

In two prior cases we have considered the relationship of intoxication to the insanity defense. In *McIntyre v. State,*

---

1. There is a statutory presumption that a person is "under the influence of intoxicating liquor" when his blood alcohol level is 0.10% or more, as measured by a chemical analysis of the person's breath. AS 28.35.033(a)(3).

2. AS 11.15.080 provides: "Every killing of a human being by the culpable negligence of another, when the killing is not murder in the first or second degree, or is not justifiable or excusable, is manslaughter, and is punishable accordingly."

3. More properly, under existing law this defense should be called the defense of mental disease or defect. See AS 12.45.083. However, it is still popularly known as the defense of insanity, and we shall continue to call it that in this opinion.

4. O'Leary submitted proposed instructions on the insanity defense, but we express no opinion on the adequacy of the proposed instructions.

5. AS 12.45.083 is modeled on the American Law Institute's substantial capacity test. See Model Penal Code § 4.01 (Proposed Official Draft 1962).

379 P.2d 615 (Alaska 1963), we upheld the trial court's refusal to present the issue of insanity to the jury.[6] In *McIntyre* the defendant presented evidence that he was intoxicated and essentially unconscious when he killed his wife. There was, however, no evidence of "alcohol psychosis" and no evidence that defendant's intoxication was *involuntary*. *McIntyre*, then, stands for the proposition that evidence of *voluntary* intoxication is not sufficient to establish an insanity defense:

A state of mind created by voluntary intoxication, such as that indicated by evidence of defendant's conduct is not a major mental disorder or disease or mental derangement which amounts to legal insanity. The majority of courts have drawn a distinction between (1) the mental effect of intoxication, which is the immediate result of a particular alcoholic bout; and (2) an alcoholic psychosis, such as delirium tremens, resulting from long continued habits of excessive drinking. The former does not amount to legal insanity, whereas the latter may. We adopt this majority view, which is in harmony with a long established legislative policy that voluntary intoxication is no defense to a crime, except insofar as the jury may take it into account in determining purpose, motive or intent.

*Id.* at 616–17 (footnotes omitted).

The relationship of intoxication to insanity was considered more recently in *McKinney v. State*, 566 P.2d 653, *rehearing granted*, 570 P.2d 733 (Alaska 1977), in which we found that there was substantial evidence to support the trial court's finding that the defendant was sane. 566 P.2d at 662. In *McKinney* the defendant challenged the court's reliance on a doctor's report that assumed that "the presence of alcohol is not relevant to a finding of non-responsibility." *Id.* at 666. We conclude that the assumption was irrelevant, since no issue was raised contending that McKinney's intoxication was not voluntarily induced. Our discussion in *McKinney* emphasized that a per-

son should be held responsible for behavior over which he has *control:*

[In *McIntyre*] [w]e held that voluntary intoxication is no defense to a crime except insofar as the jury may take it into account in determining purpose, motive or intent.

This approach is consistent with more recent decisions from other jurisdictions which have attempted to distinguish between those who lose control solely as a result of a particular alcoholic bout and those for whom alcohol related or induced insanity is a pre-existing condition. Where the freedom of choice in taking the first drink is not at issue, the language in *Evilsizer v. State*, 487 S.W.2d 113, 116 (Tex.Cr.App.1972), reflects the general rule that:

. . . if the pre-existing condition of mind of the accused is not such as would render him legally insane in and of itself, then the recent use of intoxicants causing stimulation or aggravation of the pre-existing condition to the point of insanity cannot be relied upon as a defense to the commission of the crime itself.

Where pathological intoxication is not at issue, the rule of the American Law Institute in Section 2.08 of the Model Penal Code is similar. Essentially, the Code provides that only intoxication which is not self-induced or which is pathological may be considered in determining sanity.

We believe that a rule which renders the insanity defense unavailable to those who are legally sane and capable of controlling their drinking before becoming intoxicated is mandated by the purposes and philosophy behind our statutes. Society gains little from punishing a defendant who substantially lacks the capacity to control or appreciate the nature of his conduct. For such individuals, the goals of sentencing—rehabilitation and deterrence—have no meaning. On the other hand, where an individual has knowledge

---

**6.** *McIntyre* was decided under a version of the M'Naghten test for insanity. *See McKinney v.*

*State*, 566 P.2d 653, 664, *rehearing granted*, 570 P.2d 733 (Alaska 1977).

of the adverse effects of his drinking and can choose whether or not to drink, society can legitimately expect him to conform his conduct to its demands. *Id.* at 665 (footnotes omitted).

*McKinney* thus clarifies what mental state is required to relieve a chronic alcoholic from criminal responsibility for his acts based on his inability to control his drinking, distinguishing the mental effect of intoxication which is the result of a particular alcoholic bout and "alcoholic psychosis," which occurs as a result of long continued habits of excessive drinking. Only the latter may constitute legal insanity. The test is not whether the defendant can refuse to take the first drink on any particular occasion but, rather, whether the accused's state of mind, before he initiates a drinking episode, has so deteriorated because of his chronic alcoholism (or for any other reason, for that matter) as to constitute a pre-existing condition rendering him legally insane. *See generally* 10 U.L.A., Model Penal Code § 2.08, at 473 (1974); Note, *Intoxication as a Criminal Defense*, 55 Col.L.Rev. 1210 (1955); Annot., 8 A.L.R.3d 1236, 1265 (1966 and Supp.1978).

We think this test has considerable merit and should be retained. It is consistent with our general reluctance to take account of lessened responsibility brought about by intoxication,[7] in that it focuses on the results of alcoholism as a disease or a mental defect but refuses to consider a particular bout of intoxication as a defense to a crime. Also, by requiring a long period of excessive drinking and recognizable brain syndrome, "a degree of objective evidential corroboration is attained which reduces the possibility of fraud which may be present in ordinary cases of intoxication." Note, *Intoxication as a Criminal Defense, supra* at 1221. There is no dispute here that O'Leary's pre-existing alcohol-related condition was not tantamount to legal insanity. Thus, as a matter of law, we conclude that the trial judge was correct in refusing to instruct the jury on the insanity defense.

### III. Unconsciousness

O'Leary further contends that the instructions given by the trial court on unconsciousness as a defense were inadequate because they failed to explain the significance of involuntary intoxication in determining the responsibility for his acts while he was under the influence of alcohol.[8] The court's instructions informed the jury that unconsciousness is a defense unless it is the result of a particular alcoholic bout stemming from voluntarily incurred intoxica-

---

**7.** AS 11.70.030(a) provides:

> An act committed by a person while in a state of voluntary intoxication is not less criminal because he was intoxicated. However, when the existence of a particular motive, purpose, or intent is a necessary element to constitute a particular species, or degree of crime, the jury may take into consideration the fact that the defendant was intoxicated at the time in determining the purpose, motive, or intent with which he committed the act.

*See also McKinney v. State*, 566 P.2d 653, *rehearing granted*, 570 P.2d 733 (Alaska 1977); *Pete v. State*, 379 P.2d 625 (Alaska 1963).

"Voluntary intoxication," as used in AS 11.70.030(a), has not yet been defined by this court. *See* note 3 *supra*. We think that the statutory concept of voluntariness is separate from an insanity defense which contemplates relief from criminal responsibility for lack of substantial capacity. The compulsion to drink which results from chronic alcoholism should not be a question of "voluntariness" under AS 11.70.030(a), but it should be considered in determining whether an insanity defense is applicable. *See McKinney v. State*, 566 P.2d at 665–66, which we believe agrees with the Model Penal Code § 2.08, in noting that "only intoxication which is not self-induced or which is pathological may be considered in determining sanity."

**8.** O'Leary's unconsciousness defense was that frequently, when he was intoxicated, he would enter a dissociated or blackout state in which he was able to perform acts which would appear to be normal to those around him, but he would lack a higher conscious awareness and appreciation, and ability to control what happened during the blackout period. He was also unable to remember what occurred during the blackout afterward. There was testimony by the defense experts at trial that it was more probable than not that O'Leary was in a blackout period when the accident occurred.

tion.[9] The instructions further defined voluntariness as follows:

> The consumption of intoxicating liquor is voluntary under the law that applies to this case when a person knowingly introduces such a substance into his body and knows or ought to know that it has a tendency to cause intoxication, unless he induces it pursuant to medical advice.

We think the court's instructions were adequate for the same reasons causing us to reject O'Leary's insanity defense. If he had substantial capacity to appreciate the consequences of his actions before he began to become intoxicated on a particular occasion, he cannot avoid responsibility for acts committed in a blackout state during the alcoholic bout. Therefore, the instructions given by the trial judge regarding the unconsciousness defense were correct.

## IV. Diminished Capacity

 There is no diminished capacity defense to the crime of negligent manslaughter.[10] The reason for this is that manslaughter is a general rather than a specific intent crime. *See Mill v. State*, 585 P.2d 546, 550–51 (Alaska 1978). Thus, the superior court correctly refused to instruct the jury as to that defense.[11]

## V. Elements of Culpable Negligence

O'Leary contends that a conviction of homicide by culpable negligence under AS 11.15.080 [12] requires the jury to find that he *consciously* created an unreasonable risk to others. O'Leary offered instructions which stated in part: "[T]o constitute culpable negligence, punishable as a crime, there must be shown a wanton mind bent on the doing of acts in reckless disregard for human life, or *with a conscious disregard* to the probable consequences of one's acts

. . . ." The instructions given by the trial judge, however, included the following:

> Culpable negligence is something more than that slight degree of negligence necessary to support a civil action for damages and is negligence of such a degree, so gross and wanton, as to be deserving of punishment. Culpable negligence implies a reckless disregard of the consequences which might ensue from the doing of an act and constitutes conduct of such a reckless, gross and wanton character so as to indicate an utter, heedless indifference to the rights, properties, safety and even the lives of others. However, the State need not show that Mr. O'Leary intentionally caused a head-on collision with the automobile operated by Mrs. Wallace.

> To find culpable negligence, the facts must be such that the fatal consequences of the act were certain or highly probable, and it must appear that death or serious bodily injury was not the result of misadventure but the natural and probable result of a wanton mind and reckless conduct.

> In order to constitute culpable negligence it is not necessary that the actor actually recognize that his conduct is extremely dangerous. It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the extremely dangerous character of his conduct.

 The first paragraph of the court's instruction is essentially identical to an instruction that we approved in *DeSacia v. State*, 469 P.2d 369, 371 n.2 (Alaska 1970), and we believe the instruction as a whole is a correct statement of the law. In Alaska,

---

9. *See* note 7 *supra*.

10. In *Johnson v. State*, 511 P.2d 118, 124 (Alaska 1973) (footnote omitted), we said:

> The diminished capacity doctrine is based on the theory that while an accused may not have been suffering from a mental disease or defect at the time of his offense, sufficient to absolve him totally of criminal responsibility,

the accused's mental capacity may have been diminished by intoxication, trauma, or mental disease to such an extent that he did not possess a specific mental state or intent essential to a particular offense.

11. *See also* AS 11.70.030(a).

12. AS 11.15.080 is set forth in note 2 *supra*.

homicide by culpable negligence is a form of manslaughter, and intent is not an element of the crime. *See* AS 11.15.080; *De-Sacia v. State*, 469 P.2d at 371 n.1. Culpable negligence "implies a reckless disregard of consequences, a needless indifference to the rights and safety and even the lives of others." *Barbeau v. United States*, 193 F.2d 945, 949, 13 Alaska 551 (9th Cir. 1951), *aff'g* 92 F.Supp. 196 (D.Alaska 1950). Culpable negligence requires conduct that is more wanton and reckless than that involved in ordinary negligence. *Stork v. State*, 559 P.2d 99, 101 (Alaska 1977); *De-Sacia v. State*, 469 P.2d at 372. It does not, however, require an actual subjective awareness of the risk being created. Thus, we believe that the instruction given by the trial judge adequately set forth the elements of homicide by culpable negligence.

## VI. Admissibility of Testimony

O'Leary challenges the trial judge's failure to exclude certain testimony. First he contends that the trial court erred in permitting an ambulance attendant to testify as to statements that O'Leary made to him in the ambulance on the way to the hospital following the accident. The particular testimony that O'Leary objects to is the attendant's statement that "[O'Leary] told me that he turned onto Airport Road and he knew he was in the wrong lane and that he was trying to make it down to the next intersection."

O'Leary claims that the statement was obtained in violation of his constitutional right against self-incrimination and was therefore inadmissible, since no *Miranda*[13] warnings were given. O'Leary argues that his conversation with the attendant amounted to police interrogation, since the attendant had been asked by the investigating officer to "[f]ind out for me if this guy's been drinking."

Under the reasonable person standard established in *Hunter v. State*, 590 P.2d 888, 892–901 (Alaska 1979), it appears to us that O'Leary was not in custody at the time of his conversation with the attendant. If his statement was not a product of "custodial interrogation," no *Miranda* warning was required. Since O'Leary was not in custody at the time the conversation took place, we find it unnecessary to reach the issue of whether the ambulance attendant was acting as an agent of the police when he spoke to O'Leary.[14]

O'Leary has also challenged the admissibility of the testimony of Melvin Wallace, the husband of the crash victim Wilma Sterling Wallace. Wallace's testimony was basically that his wife was driving their truck on the day of the accident, that she was on the way to meet him at the airport, that he saw the scene of the accident on his way home in a taxi, and that beer cans found in his wife's vehicle probably belonged to friends who had recently borrowed the truck. O'Leary argues that such evidence was irrelevant and that its prejudicial effect outweighed any probative value that it might have had.

We agree that the evidence was largely irrelevant and that it had very little probative value except to the extent that it might have tended to dispel any suspicion on the part of the jurors that the beer cans indicated that the victim had been drinking. Thus, apart from the explanation concerning the beer cans, we believe that the testimony should not have been admitted.[15]

---

13. In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–07 (1966), the Supreme Court required that prior to custodial interrogation

> the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

14. O'Leary also argues that his statements to the attendant were inadmissible on the ground that, because he was intoxicated to the point of unconsciousness, his statements were not voluntary. This alleged error was not argued to the trial court, and we therefore do not address it.

15. The facts surrounding the collision were a matter of stipulation, and the stipulation included the fact that a chemical analysis of the victim's blood had indicated the absence of

However, we think it can be fairly said that any error thus committed did not appreciably affect the jury's verdict. Such being the case, it was harmless under the test of *Love v. State*, 457 P.2d 622, 631 (Alaska 1969), and not a ground for reversal. Rule 47(a), Alaska R.Crim.P.

AFFIRMED.

alcohol. Therefore, even the testimony concerning the beer cans was technically irrelevant, absent any defense contention that the victim had been drinking. However, to avoid the possibility of unwarranted juror speculation that she might have been drinking, we think it would be a proper exercise of the trial court's discretion to admit such evidence.