**Phillip J. ADAMS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–116.**

Court of Appeals of Alaska.

Aug. 9, 1985.

---

3. Alaska Const., art. 1, § 7.

Tina Kobayashi, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before COATS and SINGLETON, J., and DIMOND, Senior Justice.*

## OPINION

DIMOND, Senior Justice.

Based on information received from a drug informer named Fuselier, Anchorage police found the body of James Gummo in his apartment. His hands and feet had been bound with neck ties; a sock was stuffed in his mouth, and he had been shot in the back of the head. Fuselier told the police that Adams had committed the murder. Adams was arrested, indicted, tried, and convicted for first degree murder, and was sentenced to ninety-nine years in prison. He appeals on several grounds.

## THE CONFESSION

Under interrogation by police officers, Adams confessed to having murdered Gummo. Adams moved to suppress the confession on the ground that it was improperly elicited from him in violation of his right to remain silent under *Miranda v. Arizona*,

---

* Dimond, Senior Justice, sitting by assignment made pursuant to Article IV, section 11, of the Constitution of Alaska.

384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Adams was arrested and brought to the police station at approximately 1:30 a.m. He was placed in an interview room where he remained until he confessed to the crime at about 4:30 a.m. At the omnibus hearing on his motion to suppress, Adams stated that he had been advised of his *Miranda* rights at the time of arrest and that he was familiar with such rights since he had been arrested before. He did not speak to the arresting officers.

Adams testified that he was left alone in the interview room for about an hour. He had fallen asleep when Officer Maxine Farrell entered the room, read him his *Miranda* rights, and asked him if he wanted to talk. He declined to talk to her. Adams further testified that Officer Farrell re-entered the room about fifteen minutes later with Assistant District Attorney Helene Antel. When they presented him with a waiver of rights form, Adams said he pointed to the first line where it said, "You have the right to remain silent," and said "that's what I want to do."

According to his testimony, Adams resumed sleeping, with his head resting on the desk. A police officer checked on him approximately every fifteen minutes. Sometime later Adams was told by a police officer that Fuselier had made a statement and that the police had the gun with Adams' fingerprints on it. Adams then signed a waiver of rights form and started talking. Officer Farrell, who had been talking to Adams, called Officer Douglas Jones into the room where an interview with Adams was recorded, with Farrell questioning Adams, shortly after 4:30 a.m.

On cross-examination, Adams testified that though he was tired when Farrell and Antel entered the interview room, he understood what was going on and knew that he did not have to talk to them. Adams was awake when Officer Jones entered the room at about 4:30 a.m. At no point during the recording of his interview with Officer Farrell, with Jones present, did Adams say he did not want to talk to her or that he wanted a lawyer.

The only witness produced by the state at the omnibus hearing was Officer Jones. While Jones was the officer in charge of the Gummo investigation, his only significant contact with Adams came after 4:30 a.m. when Officer Farrell brought Jones into the interview room. Jones testified that Adams was awake and at no time expressed a desire not to talk. During the fifteen minute interview in Jones' presence, Adams confessed to killing Gummo.

After hearing the testimony of Adams and Officer Jones, Judge Moody denied the motion to suppress, finding that Adams never indicated he did not want to talk to the police.

Judge Moody stated that he disbelieved Adams' testimony. If that is the case, then there is nothing in the record to account for the three-hour period between 1:30 a.m., when Adams was placed in the interview room at the police station, and about 4:30 a.m., when Officer Maxine Farrell called Jones into the interview room for Adams' confession. It seems highly unlikely that Adams would be placed in an interview room for three hours and that no police officer would have talked to him or would have attempted to "interview" him during that period of time.

In an attempt to fill in this gap, the state filed the affidavit of Officer Farrell who did not testify at the omnibus hearing. She states in her affidavit that she did talk to Adams on two or three occasions and advised him of his rights, and "[a]t no time during these events did Mr. Adams indicate a desire to exercise his rights to silence or to counsel."[1] The question that is immediately raised is whether the state could rely on Farrell's affidavit in lieu of her oral testimony. Alaska Rule of Criminal Proce-

---

**1.** Farrell testified at the trial. She said that she knew nothing about what had happened to Adams during the three or four hour period that he was in custody before she initiated contact with him at about 4:00 or 4:30 a.m. when she "gave him his rights," and he confessed to the crime. This is not consistent with the assertions she made in her affidavit.

dure 50(b)[2] incorporates by reference Civil Rule 77 relating to motion practice. *State v. Johnson*, 525 P.2d 532, 534 and n.2 (Alaska 1974). This rule provides for the filing of affidavits upon which the moving party intends to rely in support of the motion the party has made, and also by the opposing party in opposition to a motion.[3]

We believe that Civil Rule 77, made applicable to criminal actions by Criminal Rule 50(b), was intended to provide a uniform procedure for handling the many and diverse types of general procedural motions that arise in the course of litigation, both civil and criminal. In the absence of a conflict in the evidence the trial court may rely on Civil Rule 77(k) in making fact findings based upon affidavits or other documentary evidence regarding suppression motions. Where, however, the defendant testifies under oath and is subject to cross-examination, the trial court may abuse its discretion if it does not require oral testimony from the state's witnesses. An abuse of discretion is most clear in those cases, such as this one, in which the defendant's testimony, if not impeached or contradicted, would establish a violation of his or her constitutional rights and the state relies upon affidavits to contradict the defendant's testimony. Civil Rule 77(k), in providing for hearing a motion on affidavits, was not intended to substitute affidavits for the vital oral testimony of necessary witnesses essential in the determination of whether an accused's constitutional right to remain silent when questioned by the police has been scrupulously honored.

The state has a heavy burden to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602,

1628, 16 L.Ed.2d 694, 724 (1966). The accused should have the right to cross-examine a state's witness whose testimony is intended to meet such a heavy burden.

> The burden of proving that a confession is voluntary is one which the State must assume when the admissibility of a confession is questioned on the grounds that it was coerced. Only by producing all the material witnesses connected with the controverted confession can the State discharge this burden.

*People v. Armstrong*, 51 Ill.2d 471, 282 N.E.2d 712, 715 (1972), *quoting People v. Wright*, 24 Ill.2d 88, 180 N.E.2d 689, 691 (1962). *See also Smith v. State*, 256 Ark. 67, 505 S.W.2d 504 (1974). The filing of affidavits in lieu of producing witnesses, such as that of Officer Farrell, simply will not suffice.

If what Adams said at the suppression hearing is true, then a serious question is raised as to whether his constitutional right to remain silent was scrupulously honored by the police. *Miranda* states that if "the individual indicates *in any manner* ... that he wishes to remain silent, the interrogation must cease." 384 U.S. at 473–74, 86 S.Ct. at 1627, 16 L.Ed.2d at 723 (emphasis added). And in *Michigan v. Mosley*, 423 U.S. 96, 102, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 320 (1975), the court said: "To permit the continuation of custodial interrogation after a momentary cessation would clearly frustrate the purposes of *Miranda* by allowing repeated rounds of questioning to undermine the will of the person being questioned."

We recognize the right of Judge Moody to judge the credibility of the witnesses before him, because he had the opportunity to observe their demeanor. But when Adams, in his testimony, raises the question of whether his confession was ob-

---

**2.** Criminal Rule 50(b) provides in relevant part:
> (b) *Civil Rules to Apply.* All other provisions of the Rules of Civil Procedure relating to attorneys, regarding applications to the court, stipulations, examining witnesses, ... shall apply to practice in criminal actions in the courts of the state.

**3.** Civil Rule 77(k) provides:

> (k) When a motion is based on facts not appearing of record, the court may hear the matter on affidavits or other documentary evidence presented by the respective parties, but the court may direct that the matter be heard wholly or partly on testimony or deposition.

tained by forbidden means, one simply cannot disregard everything Adams said when the state does not produce a single witness who can contradict or cast doubt on the veracity of what Adams has testified to. The state had the burden, after Adams had testified, to demonstrate that he was advised of his *Miranda* rights and that they were scrupulously honored. The record as it stands indicates that the state failed to meet that burden.

We shall remand this case to the trial court for concise and adequate findings of fact as to what precisely took place between the police and Adams during the time from his arrest at about 1:00 a.m. until he made his confession sometime after 4:30 a.m. The court may, in its discretion, hold additional hearings and order any or all of the original witnesses to be recalled. The court may also permit additional testimony or other evidence, argument, or briefing. *See Johnson v. State,* 631 P.2d 508, 513–14 (Alaska App. 1981). If the trial court determines that Adams' statements should have been suppressed, it shall order a new trial.

### EVIDENCE OF PRIOR CRIME BY FUSELIER

The theory of defense at trial was that the key prosecution witness, Fuselier, had actually committed the murder. Gummo, the victim, had been struck on the head and shot prior to being robbed. Fuselier was convicted in 1976 of assault with attempt to rob. In that case he had entered into the victim's hotel room with a club and had hit the man on the head in attempt to rob him, but was interrupted by the police. Adams sought to introduce Fuselier's prior convic-

tion under Alaska Rule of Evidence 404(b) [4] as a "method of operation for Mr. Fuselier that indicates when he is in needful [sic] of money or something he enters other people's houses and robs them." Judge Carlson denied the request, finding that the prior conviction was not indicative of a pattern.

Adams again sought to introduce Fuselier's prior conviction during cross-examination. An offer of proof was made. Adams argued that this was a "signature crime," admissible for the purposes of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Judge Carlson again denied the request, finding an insufficient link to activate Evidence Rule 404(b).

Judge Carlson's ruling was correct. The only similarity between the two crimes is that Fuselier's 1976 assault with intent to rob involved entering a hotel room with a club and hitting the victim on the head. In this case, Gummo was hit on the head, but in addition, had his hands and feet bound, his mouth stuffed with a sock, and had been shot in the head. The two crimes are not nearly similar enough to show identity or to constitute a "signature crime."[5] *Galauska v. State,* 527 P.2d 459, 467 (Alaska 1974). Certainly, the two crimes here were not sufficiently similar and unusual in their pattern to constitute a *modus operandi* probative of Fuselier being the assailant in both instances. *Cf. Coleman v. State,* 621 P.2d 869, 875 (Alaska 1980).

### DENIAL OF MOTION FOR CONTINUANCE

At the trial the state called an expert on fingerprints, Officer Morris, who testified

---

**4.** Evidence Rule 404(b) reads as follows:

(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**5.** This exception to the rule which prohibits evidence of other crimes committed by the witness is used, as Professor McCormick states,

to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device must be so unusual and distinctive as to be like a signature.

E. Cleary, McCormick on Evidence § 190, at 449 (2d ed. 1972) (footnotes omitted).

that he had lifted several palm prints from the scene of the crime and that none of them matched the palm prints received from Adams or other witnesses. On cross-examination Adams got Morris to admit that he did not have palm prints of Fuselier to compare to the prints lifted from the crime scene.

Subsequently, the state obtained prints from Fuselier and sought to recall Officer Morris to testify that the lifted prints were not Fuselier's either. Adams requested a continuance of at least one week to get an independent analysis of the palm prints. Judge Carlson denied the request for a continuance but stated that if Adams' expert said that the prints from the crime scene were Fuselier's then he would grant a new trial based upon newly discovered evidence. Adams further argued that he was being deprived of an opportunity to prepare to cross-examine Officer Morris.

■ Judge Carlson did not abuse his discretion in denying the request for a continuance. Adams had been aware of the lifted prints and that Morris was to be called as an expert witness. He had prepared to cross-examine Morris as to the lifted prints and their dissimilarity to Adams' prints. The only unanticipated evidence was the new testimony that the prints did not match Fuselier's. Once the defense had adopted its theory that Fuselier committed the crime, it should have been evident that comparison of Fuselier's prints to those lifted from Gummo's apartment would be material. Especially in the light of Judge Carlson's offer to grant a new trial if the expert Adams proposed to engage said that the prints lifted from the scene were Fuselier's, his denial of the motion for continuance did not prejudice Adams' rights and was not an abuse of discretion. *Nielsen v. State*, 623 P.2d 304, 307 (Alaska 1981).

### THE SENTENCE

Adams argues that his maximum sentence of ninety-nine years is excessive. He

6. *Bell v. State*, 598 P.2d 908, 915 (Alaska 1979).

claims that Judge Carlson was clearly mistaken in classifying him as a "worst offender" and in giving little weight to the sentencing goal of rehabilitation.

In concluding that Adams was a worst offender, and thus was subject to a maximum sentence,[6] Judge Carlson considered Adams' history of criminal activity, including a prior conviction for armed robbery. The offense here was a particularly brutal and cold blooded murder; Gummo was hit with a pistol, bound, gagged, and then shot in the head at close range. There is simply no merit to Adams argument that his case "was neither better nor worse than the average first-degree murder case."

■ The priority of sentencing goals is within the trial judge's discretion. *Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973). Judge Carlson was not clearly mistaken in imposing a ninety-nine year sentence. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

This case is REMANDED to the trial court for further proceedings consistent with the views expressed in this opinion.

BRYNER, C.J., not participating.