Clinton T. DAVIS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2084.

Court of Appeals of Alaska.

Dec. 16, 1988.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Clinton T. Davis was convicted, following a jury trial, of one count of misconduct involving a controlled substance in the third degree (possession of cocaine with intent to deliver), and one count of misconduct involving a controlled substance in the fourth degree (maintaining a dwelling used for distribution of cocaine). Superior Court Judge James A. Hanson sentenced Davis to consecutive terms totaling eight years with two years suspended and imposed a fine of $30,000. Davis appeals, contending that the court improperly restricted the scope of the evidentiary hearing on his motion to suppress and that it erred in denying the motion. Davis also contends that separate convictions and sentences for his two offenses were barred by double jeopardy and that his sentence is excessive. We affirm.

Davis' convictions resulted from a search of his Fairbanks residence conducted pursuant to a warrant issued on October 31, 1986. The warrant was based on testimony given by Alaska State Trooper Ray Minatra after a police informant, William Saunders, made a controlled buy of one-eighth ounce of cocaine at the residence from Davis' wife. Approximately one pound of cocaine was found in the house during the search. Davis, who was present, was subjected to a warrantless search and was found to be in possession of two slips containing small amounts of cocaine.

Prior to trial, Davis moved to suppress all fruits of the October 31 search, advancing three grounds. First, Davis alleged that Trooper Minatra omitted material facts in testifying in support of the warrant by failing to disclose details concerning informant Saunders' pending charges and the terms of his contract to serve as a police informant. Second, he alleged that Minatra misstated the facts by testifying that, during the controlled buy, Saunders was under constant surveillance by the police and was seen entering and leaving Davis' residence. Third, Davis alleged that the warrantless search of his person was unlawful and that the seizure of numerous articles from his residence exceeded the scope of the warrant.

Davis' case was assigned to Superior Court Judge James A. Hanson. In response to Davis' suppression motion, the state filed an opposition noting, among other things, that Davis' wife (who had also been charged following the October 31 search) had previously filed a suppression motion raising similar issues and that Judge Hanson had already denied that motion. After receiving the state's opposition, Judge Hanson issued an order setting a date for an evidentiary hearing but re-

stricting the scope of the hearing to the issues of whether there was a break in police surveillance of Saunders during the controlled buy and whether the seizure of various articles from Davis' home exceeded the scope of the warrant.

Following the evidentiary hearing, the court denied Davis' motion to suppress. The court ruled, first, that the judge who issued the challenged warrant was made sufficiently aware of Saunders' relationship with the police. Second, the court found that Minatra had made a material misstatement of fact in testifying that Saunders had been observed entering and leaving the Davis residence, but it concluded that the misstatement was merely negligent and did not warrant suppression. Finally, the court concluded that the seizure of cocaine from Davis' person was a valid search incident to arrest and that the seizure of most of the articles taken from Davis' home did not exceed the scope of the warrant.

Davis' initial claim on appeal is that the superior court erred in restricting the evidentiary hearing. Davis has cited no authority, however, to establish the proposition that he was entitled to an evidentiary hearing on his suppression motion. The trial court normally has broad discretion to control the procedures used to resolve pretrial motions. *See, e.g., Selig v. State,* 750 P.2d 834, 837 n. 4 (Alaska App.1988). In *Adams v. State,* 704 P.2d 794, 796–97 (Alaska App.1985), we held that Alaska Civil Rule 77 applies in criminal cases and establishes the general procedures governing the disposition of suppression motions. We held in *Adams* that, under Civil Rule 77, the moving party bears the initial burden of alleging specific facts, supported by affidavits or other documents, that would entitle the party to relief. The burden then shifts to the opposing party to dispute the moving party's allegations. Only in the event that the pleadings raise a genuine dispute as to material facts is an evidentiary hearing required. *Adams,* 704 P.2d at 797.

A similar procedure has specifically been adopted by the Alaska Supreme Court for cases in which defendants claim that the state made material misrepresentations of fact in obtaining a search warrant. In *State v. Malkin,* 722 P.2d 943 (Alaska 1986), the supreme court placed the burden of proof on the state to establish that a material omission or misstatement was neither intentional nor reckless. *Id.* at 946. The court made it clear, however, that the state is not obligated to assume this burden until the defendant establishes the existence of a substantial inaccuracy:

> [O]nce the defendant has pointed out specifically that statements in the affidavit are false, together with the statement of reasons in support of the assertion of falsehood, the burden then shifts to the state to show by a preponderance of the evidence that the statements were not made intentionally or with reckless disregard for the truth.

*Id.* (footnote omitted).

With regard to the defendant's duty to specify the statements that are alleged to be false and to provide "a statement of reasons in support of the assertion of falsehood," the supreme court quoted with approval the following language from *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978):

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*See Malkin,* 722 P.2d at 946 n. 5.

 Both *Malkin* and Civil Rule 77 thus make it clear that a defendant is not entitled to a full evidentiary hearing as a matter of right upon the filing of a motion to suppress evidence. To the extent that verified pleadings or other documents filed

by the defendant in support of a motion to suppress, when coupled with opposing pleadings and documents filed by the state, leave issues of fact to be decided, an evidentiary hearing will be required. *Adams,* 704 P.2d at 796–97. Absent genuinely disputed factual issues, however, the trial court has broad discretion to dispose of issues raised in a motion without conducting an evidentiary hearing. *See* Alaska R.Civ.P. 77(k); *see also Weidner v. Superior Court,* 715 P.2d 264 (Alaska App.1986).

■ In the present case, Davis' trial counsel filed a motion to suppress evidence that was accompanied by a request for an evidentiary hearing and a supporting memorandum that set out in general terms the theory upon which Davis' motion was based. The memorandum was largely conclusory in its allegations, relying in several places on a recitation that Davis' counsel hoped to support his claims with facts to be established at an evidentiary hearing. No affidavits or other documents were filed in support of Davis' motion, and no explanation was advanced for the absence of supporting materials.

In response to Davis' motion, the state called the court's attention to the similarity between some of the issues raised by Davis and the issues that had previously been raised by Davis' wife. A full evidentiary hearing had apparently been conducted by the court on the previous motion to suppress, and the state attached to its opposition a copy of the court's order denying the previous motion.

The court then issued its order setting Davis' motion for an evidentiary hearing, but limiting the hearing to evidence relating to Davis' claims that there had been a break in surveillance and that the police had seized items that were not covered by the warrant. The order in effect precluded Davis from presenting evidence on his claim that the police improperly failed to disclose the nature of the criminal charges pending against Saunders and the terms of his agreement to serve as a police informant. The order also barred evidence relating to the claim that the police engaged in an impermissible search of Davis' person.

At the evidentiary hearing, Davis' trial counsel asked the court to clarify its order restricting the scope of the evidence. The court, evidently referring to the hearing previously held on the motion filed by Davis' wife, indicated that it wanted to avoid hearing testimony that had previously been presented and that its intent was to limit counsel to developing new evidence. Davis' trial counsel did not object to the court's explanation or make any offer to present new or additional evidence on the issues that the court had foreclosed.

At no point did Davis present to the trial court specific and properly documented allegations that would have entitled him to a hearing as a matter of right. Indeed, it appears that there was no genuine dispute as to the basic facts surrounding the two issues that Davis was precluded from addressing at the evidentiary hearing.

As to the first precluded issue, the trial court was well aware of Saunders' pending criminal charges and of the fact that the state had agreed not to pursue the most serious charges in return for Saunders' cooperation as an informant. In denying Davis' motion, the trial court accepted these facts as established, concluding that the judge who issued the warrant had been supplied with adequate information to make an accurate assessment of Saunders' credibility.

As to the second precluded issue, it appears that the trial court disposed of Davis' claim as a matter of law and not as a matter of fact. Davis' motion alleged that the search of his person was warrantless, that it was not a pat-down search made in connection with the initial police entry of his residence, and that it was not made incident to his arrest because it occurred before he was actually placed under arrest.

In response, the state pointed out that Alaska law allows a search incident to arrest to take place prior to the actual arrest as long as the search is substantially contemporaneous to the arrest and is supported by probable cause. *See, e.g., Uptegraft v. State,* 621 P.2d 5, 9 (Alaska 1980).

In rejecting Davis' claim, the court in effect accepted Davis' factual allegations but adopted the state's legal analysis.

On appeal, Davis makes only a conclusory and generalized claim of prejudice. He advances no offer of proof and fails to suggest any specific facts that he might have established that were not already known to the trial court. Having reviewed the record of proceedings below, we are satisfied that the trial court did not abuse its discretion in restricting the scope of the evidentiary hearing.

■ Davis separately alleges that the trial court erred in concluding that the misstatement made by Trooper Minatra was negligent, rather than intentional or reckless.

The undisputed evidence presented below established a break in the police surveillance of Saunders during his controlled buy of drugs from the Davis residence on October 30. According to the evidence, Saunders arranged to purchase cocaine from Davis' wife at the Davis residence. On the evening of October 30, 1985, Saunders made a telephone call to the Davis residence in the presence of the police to inform Davis' wife that he was coming. The police conducted a strip search of Saunders, issued marked money to him, and maintained surveillance as Saunders entered a taxicab and was driven to an area just outside the cul-de-sac where Davis' residence was located. Police saw Saunders walk toward Davis' residence but lost sight of him in the darkness approximately 150 to 250 feet before he reached it. They saw Saunders walk from the direction of the residence to the cab three or four minutes later. Saunders subsequently gave the police cocaine, stating that he had purchased it from Davis' wife. There was only one other residence in the cul-de-sac where Davis' residence was located. Police were able to maintain surveillance of the other residence during the controlled buy. Saunders did not approach it. At the time of his participation in the controlled buy, Saunders did not know where the police officers who were conducting surveillance would be located.

The trial court found that Trooper Minatra had made a material misstatement in testifying that Saunders had been observed entering and leaving the Davis residence. The court concluded, however, that the misstatement resulted from Minatra's use of conclusory phrasing and that Minatra "sincerely believed" his statement at the time that he made it. Accordingly, the trial court ruled that the misstatement, while negligent, was neither intentional nor reckless. Relying on *State v. Malkin*, 722 P.2d at 946, the court concluded that the misstatement did not warrant suppression.

Davis does not directly challenge the trial court's finding that Minatra sincerely believed in the accuracy of his testimony at the time he gave it. Davis nevertheless insists that Minatra's personal belief is irrelevant to the issue of his recklessness in misstating the facts.

In advancing this argument, Davis misunderstands the distinction between negligence and recklessness. The negligence standard is a wholly objective one. A person acts negligently by failing to perceive a substantial and unjustifiable risk that would have been perceived by a reasonable person. Recklessness, in contrast, combines objective and subjective components. A person acts recklessly by disregarding a substantial and unjustifiable risk despite an actual subjective awareness of that risk. *Compare* AS 11.81.900(a)(3) (defining "recklessly") *with* AS 11.81.900(a)(4) (defining "criminal negligence").

Here, the trial court in effect found that Minatra failed to perceive the risk that his testimony might be misleading. This factual finding is not clearly erroneous, and it precludes a conclusion that Minatra acted recklessly or intentionally. We find no error in the trial court's denial of Davis' suppression motion.

■ Davis next contends that the double jeopardy clause of the Alaska Constitution prohibits separate convictions and sentences for possession of cocaine with intent to deliver, AS 11.71.030(a)(1), and knowingly maintaining a dwelling used for keeping or distributing cocaine, AS 11.71.040(a)(5).

We find no merit to this claim. While Davis' violation of both statutes resulted from a single course of action, the offenses differ markedly in the conduct that they prohibit and in the specific social interests that they seek to preserve. Davis' double jeopardy rights were not infringed by the entry of separate convictions and sentences on these charges. *See State v. Dunlop,* 721 P.2d 604, 607–08 (Alaska 1986).

■ Davis' final claim is that his total sentence of eight years with two years suspended is excessive. Davis' convictions involved the possession of a large quantity of cocaine, approximately one pound. The possession occurred in a context that was clearly commercial. Davis was nominally a first offender when he committed these offenses. We have consistently approved sentences of up to six years with two years suspended for first felony offenders convicted of similar offenses. *See Rivas v. State,* 706 P.2d 1202 (Alaska App.1985); *Stuart v. State,* 698 P.2d 1218 (Alaska App.1985); *Lausterer v. State,* 693 P.2d 887 (Alaska App.1985).

Davis' offense is distinguishable from cases such as *Rivas, Stuart,* and *Lausterer* in one significant respect. Less than three months before committing the offenses in the present case, Davis was arrested and charged with five counts of unlawful possession and distribution of cocaine. These charges involved relatively large quantities of cocaine. Davis was released on bail on the prior charges when he committed the current offenses.

■ Because Davis was not convicted of the prior offenses until after his commission of the current offenses, the prior offenses did not trigger presumptive sentencing. Nevertheless, in imposing a nonpresumptive sentence in this case, the superior court was entitled to consider the prior charges and the fact that Davis had only recently been released on bail when he committed the current offenses. *See, e.g., Sanders v. State,* 602 P.2d 1252 (Alaska 1979); *Bush v. State,* 678 P.2d 423 (Alaska App.1984); *Rosa v. State,* 627 P.2d 658 (Alaska App.1981).

Having independently reviewed the entire sentencing record, we conclude that the sentences imposed below are not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The judgment is AFFIRMED.

SINGLETON, Judge, concurring.

I agree with Chief Judge Bryner's resolution of the issues in this case. However, I believe a few additional remarks are in order to clarify some ambiguities in the criminal rules governing criminal motion practice and in the cases interpreting the rules.

First, trial judges have discretion to dispense with the formal requirements of Civil Rule 77 (incorporated by reference into the criminal rules by Criminal Rule 50(b)). *Selig v. State,* 750 P.2d 834, 837 n. 4 (Alaska App.1988); *Weidner v. Superior Court,* 715 P.2d 264, 265–68 (Alaska App.1986).[1] *But see State v. Johnson,* 525 P.2d 532 (Alaska 1974) (Civil Rule 77 governing motion practice is made applicable to criminal actions by Criminal Rule 50(b)). *Adams v. State,* 704 P.2d 794, 796–97 (Alaska App. 1985), applies only to situations where the trial court, in its discretion, has elected to utilize the formal procedures set out in Civil Rule 77. It does not appear to address situations where the trial court has elected to utilize the less formal procedures contemplated by Criminal Rules 16 and 42. *See Weidner,* 715 P.2d at 266–67. Nevertheless, it seems to me that the reasons set forth in *Adams* for requiring an evidentia-

---

1. In *Weidner,* we noted that the formal requirements in Civil Rule 77 might conflict with the informal procedures arguably encouraged by Criminal Rules 42 and 16. *Weidner,* 715 P.2d at 266–67. We did not mention Criminal Rule 40(d) which, by incorporating a part of Civil Rule 77, may imply an intent by the Alaska Supreme Court to dispense with the other requirements of the rule. I recognize that it would be possible to synthesize a single rule governing criminal motion practice out of Criminal Rules 12, 16, 40(d), 42, 50(b), and Civil Rule 77. However, we declined to do so in *Weidner,* preferring to let each trial judge determine for himself or herself which procedures to follow so long as counsel and the parties are given reasonable advance notice of the procedures to be followed. *Id.* at 268.

ry hearing with oral testimony and appropriate cross-examination whenever the parties' affidavits present disputed issues of material fact apply equally to both informal and formal proceedings. *See Weidner*, 715 P.2d at 267 (discussing informal procedures under Criminal Rule 16). I agree with the majority that evidentiary hearings are required only where materials submitted in support of and in opposition to a motion disclose the existence of disputed issues of material fact. I also agree that the trial judge has substantial discretion in determining which issues of fact are material.

In this case, court and counsel seem to have implicitly elected to proceed informally but, nevertheless, the trial judge determined to hold an evidentiary hearing. I agree with Chief Judge Bryner that the trial judge has broad discretion to determine what issues should be addressed at such a hearing, and that the trial judge may consider evidence developed in other hearings as long as the parties had notice and an opportunity to be heard. If the record, however developed, presents disputed issues of material fact, I agree that *Adams* should be followed and an evidentiary hearing held at which the parties have the opportunity to present evidence and confront opposing evidence on the disputed issues. Afterwards, the trial court should state "essential findings on the record." *Burks v. State*, 706 P.2d 1190, 1191 (Alaska App.1985).

My second area of concern involves the parties' respective burdens of proof in criminal motion practice, particularly in re-solving disputes under *State v. Malkin*, 722 P.2d 943 (Alaska 1986). Distribution of the burdens of proof would appear to involve questions which are not necessarily governed by the trial court's discretionary power to establish procedures. *See generally* Edward W. Cleary (ed.), *McCormick on Evidence*, §§ 336–341. (3rd ed.1984). In discussing burdens of proof, it is useful to distinguish between three separate burdens: (1) the burden of pleading, (2) the burden of production, and (3) the ultimate burden of persuasion. *Selig*, 750 P.2d at 839. At the outset, we should recognize that the majority opinion in *Malkin* is somewhat ambiguous in two respects: (1) in its treatment of the parties' respective burdens of proof, and (2) in its definition of the kind of "reckless behavior" which will warrant deletion of misstatements of fact from an affidavit in support of a warrant before determining probable cause.

It seems to me that the *Malkin* court intended to put the burdens of pleading, production, and persuasion on the defendant to show by a preponderance of the evidence that the affidavit contained misstatements of fact. In addition, the defendant has the burdens of initial pleading and production on the issues of intentional falsehood or reckless and material falsehood.[2] The defendant satisfies this burden, by presenting, in affidavit form, some evidence to support a favorable finding, *i.e.*, evidence which would support an inference of: (1) intentional[3] or (2) reckless and material misstatements. It may be that, in a given case, substantial evidence of material false statements would satisfy the defendant's burdens of pleading and produc-

---

**2.** If the misstatements were not intentional, then in order to ultimately prevail, the defendant must persuade the trial court that the misstatements of fact were material, *i.e.*, that, if excluded, it is likely that the magistrate would not have authorized the warrant because the warrant would not be supported by probable cause. Where the trial court is satisfied that the alleged misstatements are clearly not material, the defendant has suffered no prejudice and the court need not determine whether the misstatements were reckless or negligent. In such a case, the defendant can only prevail if the misstatements were intended to mislead the magistrate.

**3.** The word "intentional" in context could mean "knowing." *See, e.g., Mill v. State*, 585 P.2d 546, 548–50 (Alaska 1978), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979) (treating "knowledge" and "intent" as synonymous). It seems to me that *Malkin* requires more than a showing that the affiant may have been aware that one or more of his assertions were false. In order to quash a warrant, the trial court should find that the false statements were included with the intent to mislead the magistrate. In such a case, the court can readily infer that the affiant, at least, believed that the false statements were material. *See Williams v. State*, 629 P.2d 54, 64 n. 22 (Alaska 1981).

tion on the issues of intent and "reckless-ness." If the defendant satisfies these burdens, then the burden of production on the issues of intent, recklessness, and materiality shift to the state. The ultimate burden of persuasion would always be on the state to prove that any misstatements were not made intentionally or recklessly. If the state succeeds in disproving intentional behavior, but the trial court finds reckless behavior, then the ultimate burden of persuasion on the issue of the materiality of the misstatements would appear to rest on the defendant. These conclusions appear consistent with *Malkin*, particularly with the concerns which led the majority to depart from the procedures adopted in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). These conclusions also meet the concerns voiced in the dissent. *See Malkin*, 722 P.2d at 948–49 (Compton, J. dissenting). More significantly, this distribution of the respective burdens of pleading, production, and persuasion, is consistent with our general treatment of the respective burdens in criminal motion practice generally, including those cases involving issues on which the state bears the ultimate burden of persuasion. *See Selig*, 750 P.2d at 839.

My final concern involves the meaning of "reckless" or "reckless disregard" in the context of a *Malkin* hearing. Alaska cases have not always agreed on the meaning of the term "reckless." The phrase "reckless disregard" has been equated with gross or culpable negligence, not requiring "awareness of the risk." *O'Leary v. State*, 604 P.2d 1099, 1104–05 (Alaska 1979), *overruled on other grounds sub nom, Evans v. State*, 645 P.2d 155, 160 n. 11 (Alaska 1982), *accord Restatement (Second) of Torts*, § 500 (1965). Alternatively, this court has held that "recklessness" under the revised criminal code does require subjective knowledge of the risk. *See, e.g., St. John v. State*, 715 P.2d 1205, 1208–09 (Alaska App.1986). My reading of *Malkin* leads me to join the majority in concluding that the trial court must find that the affiant was subjectively aware of a substantial risk that his statements were material and

false before they should be deleted from the affidavit in determining probable cause. Of course, the defendant satisfies his burden of production on the issue of "reckless disregard" if he shows that the officer knew or should have known that statements in the affidavit were false. If a reasonable person would have known a fact or been aware of a risk, then the court may infer that the officer in question knew the fact or was aware of the risk. *St. John v. State*, 715 P.2d at 1209.