Steven ST. JOHN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–779.

Court of Appeals of Alaska.

March 21, 1986.

Rehearing Denied April 8, 1986.

Robert H. Wagstaff, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and SINGLETON and SERDAHELY,* JJ.

## OPINION

SINGLETON, Judge.

Steven St. John was convicted by a jury of one count of manslaughter, AS 11.41.-120(a)(1), and one count of assault in the second degree, AS 11.41.210(a)(2). The facts are not in dispute. At approximately 1:00 a.m. on November 5, 1983, St. John was driving on the wrong side of the road, travelling north in the southbound lane of a divided highway known locally as the Minnesota Bypass, between Raspberry Road and International Airport Road. St. John was driving without his lights on. He apparently engaged his lights moments before he collided head on with another vehicle proceeding in its proper lane of traffic. Shelly Reed, the driver of the other vehicle, was killed instantly and Karen Wuitschick, her passenger, was injured. St. John was charged with manslaughter for the death of Reed and second-degree assault for the injuries to Wuitschick. St. John appeals his conviction and sentence. We find prejudicial error in one of the jury instructions given and, therefore, reverse St. John's conviction.

St. John argues that Instruction No. 13 misstated the law. The instruction provided:

> If you find that the defendant operated a motor vehicle at the time of the accident while under the influence of intoxicating liquor that is sufficient to establish recklessness on his part.
>
> A person is under the influence of intoxicating liquor when, as a result of the use thereof, his physical and mental abilities are impaired so that he no longer has the ability to operate or drive a vehicle under the same or similar circumstances with a caution characteristic of a person of ordinary prudence who is not under the influence of intoxicating liquor.

In *Edgmon v. State*, 702 P.2d 643 (Alaska App.1985), we rejected a claim that similarity between Alaska's manslaughter and criminally negligent homicide statutes offended equal protection. The claim in that case rested on the assertion that when the actor is intoxicated the definitions of the mental states required for the two offenses are virtually identical. Alaska Statute 11.-41.120 provides:

> *Manslaughter.* (a) A person commits the crime of manslaughter if the person
>
> (1) intentionally, knowingly, or recklessly causes the death of another person under circumstances not amounting to murder in the first or second degree; or
>
> (2) intentionally aids another person to commit suicide.
>
> (b) Manslaughter is a class A felony.

Alaska Statute 11.41.130 provides:

> *Criminally Negligent Homicide.* (a) A person commits the crime of criminally negligent homicide if, with criminal negligence, the person causes the death of another person.
>
> (b) Criminally negligent homicide is a class C felony.

In *Edgmon*, we concluded that there were sufficient differences between the mental state of recklessness and the

---

* Serdahely, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

mental state of criminal negligence to distinguish the two statutes even when the actor is intoxicated. Alaska Statute 11.81.-900(a) provides in part:

(3) a person acts "recklessly" with respect to a result or to a circumstance described by a provision of law defining an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation; a person who is unaware of a risk of which the person would have been aware had that person not been intoxicated acts recklessly with respect to that risk;

(4) a person acts with "criminal negligence" with respect to a result or to a circumstance described by a provision of law defining an offense when the person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

We noted that the conduct and the risk to be perceived were the same for both negligent homicide and manslaughter, but that the mental states differed. To be reckless, a person must be aware of and consciously disregard a risk, while a person is criminally negligent if he or she fails to perceive, and therefore disregards, the risk in question. We further held that when a defendant is intoxicated and therefore unaware of a risk, "[t]he state is still obligated to prove that [the defendant], given his faculties, his education, his experience, and his intelligence, would have perceived that risk but for his intoxication." 702 P.2d at 645.

Despite *Edgmon*, the state attempts to justify the instruction given in this case by reference to *Lupro v. State*, 603 P.2d 468 (Alaska 1979). In *Lupro*, the supreme court considered the interplay between intoxication and culpable negligence under former law and concluded that a *prima facie* case of the crime of negligent homicide was established once the state showed that a driver was intoxicated at the time of the accident, and that his intoxication was the cause of the victim's death. 603 P.2d at 475. The state argues that criminal negligence under current law and culpable negligence under former law are essentially the same, and that, consequently, the rule in *Lupro* would apply to a criminal negligence prosecution under current law. The state then reasons that the only difference between recklessness and criminal negligence is the actor's appreciation of the risk, unless the actor's only reason for failing to appreciate the risk is his intoxication. Thus, the state concludes:

Under this definition of "recklessness," a person who drives an automobile while intoxicated must have acted recklessly. Under *Lupro*, the act of driving while intoxicated constitutes a "substantial and unjustifiable risk" as a matter of law. Now, either the defendant (a) was aware that he was driving while intoxicated—in which case he was aware of and consciously disregarded a substantial and unjustifiable risk of human death—or (b) the defendant was too intoxicated to perceive that he was driving while intoxicated—in which case he failed to perceive a risk that he otherwise would have been aware of but for his intoxication. In either case, the mental state of the driver satisfies one of the two alternative elements necessary for proof of "recklessness" rather than mere "criminal negligence." Thus, under the definitions of these two culpable mental states found in the criminal code, and given the holding in *Lupro* that driving while intoxicated is *per se* culpable negligence under the common law definition, it follows that driving while intoxicated is "recklessness" as a matter of law under Alaska's present criminal code. [Footnote omitted.]

■■■ The state is correct that the *Lupro* court treated the terms "culpable negligence" and "recklessness" synonymously. In so doing, it apparently relied on the Restatement (Second) of Torts § 500 (1965)

which used the term "recklessness" to cover both recklessness and criminal negligence as they are defined in the Model Penal Code and in the current Alaska Statutes. *See Abruska v. State*, 705 P.2d 1261, 1270 n. 7 (Alaska App.1985). The state's continued reliance on *Lupro* is misplaced, however, for two reasons. First, under former law, it was unnecessary for a jury to find that the actor had subjective knowledge of the risk his conduct posed to others in order to convict him of negligent homicide.[1] *O'Leary v. State*, 604 P.2d 1099, 1104–05 (Alaska 1979), *overruled on other grounds, Evans v. State*, 645 P.2d 155 (Alaska 1982). Thus, while the supreme court treated the terms "culpable negligence" and "recklessness" interchangeably, it followed the Restatement view that recklessness did not necessarily require subjective knowledge of the risk. Current law defines recklessness to require subjective knowledge of the risk. This leads to the state's second error in interpreting *Lupro* and its progeny. The state confuses (1) a *prima facie* case, which will prevent a defendant from obtaining a judgment of acquittal; and, (2) a directed verdict of guilty on an element of an offense. As we pointed out in *Pears v. State*, 672 P.2d 903, 913 (Alaska App.1983) (Singleton, J. and Bryner, C.J., concurring) *rev'd on other grounds* 698 P.2d 1198 (Alaska 1985), in

most cases, when the state shows that an intoxicated person drove a car and caused a death, it has made a *prima facie* case of manslaughter as defined in AS 11.41.120. This follows from the fact that if a reasonably prudent person, under all of the circumstances, would have been aware of a risk, a jury may, but is not required, to infer that the actor was aware of the risk. A *prima facie* case gets the case to the jury; it does not decide the case for the jury. The jury must still make the independent determination that this defendant, given all of his strengths and weaknesses, and the totality of the circumstances, was aware of the risk in question. *Edgmon v. State*, 702 P.2d at 645. In summary, evidence that a defendant drove while intoxicated and, as a result, caused the death of another person, may establish a *prima facie* case of the recklessness necessary for a finding that the defendant committed manslaughter. Thus, the trial court erred in instructing the jury that a person who operates a motor vehicle while under the influence of alcohol is reckless *per se*, whether he is aware of the risks his conduct poses or not.[2]

 Nevertheless, the state argues the error was harmless beyond reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17

---

1. Under former law, negligent homicide was manslaughter. *Cf.* Former AS 11.15.080 (killing by culpable negligence is manslaughter) with Former AS 11.15.040 (manslaughter). It required culpable negligence which the supreme court equated with "recklessness" but which did not require subjective knowledge of the risk.

2. In context, a *prima facie* case is conceptually similar to a presumption of recklessness. *Cf.* A.R.E. 303(b) (a statute providing that a fact or group of facts is *prima facie* evidence of another fact, establishes a presumption under this rule). Consequently, a jury instruction conveying this fact to the jury must comport with Alaska Evidence Rule 303(a), which provides:

 *Presumptions Directed Against an Accused.* In all criminal cases when not otherwise provided for by statute, by these rules or by judicial decision, a presumption directed against the accused imposes no burden of going forward with evidence to rebut or meet the presumption and does not shift to the accused the burden of proof in the sense of the risk of

nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast. However, if the accused fails to offer evidence to rebut or meet the presumption, the court must instruct the jury that it may, but is not required to, infer the existence of the presumed fact from the proved fact, but no mention of the word "presumption" shall be made to the jury. If the accused offers evidence to rebut or meet the presumption, the court may instruct the jury that it may, but is not required to, infer the existence of the presumed fact from the proved fact, but no mention of the word "presumption" shall be made to the jury.

 Instruction No. 13 violates this rule by telling the jury that proof of driving while intoxicated is sufficient to establish recklessness. The instruction precluded the jury from finding, after reviewing the totality of the circumstances, that St. John was not aware, for reasons unrelated to the state of his intoxication, of the risks his conduct posed. The instruction was therefore erroneous and should not have been given.

L.Ed.2d 705, 710–11 (1967). The state makes a compelling case. Steven St. John did not testify, and the defense rested at the completion of the prosecution's case. There was limited cross-examination of the state's witnesses. There is nothing in the record to suggest that St. John is of limited intelligence or suffers from any disabilities of sight or hearing. The undisputed evidence established that he was driving on the wrong side of a divided highway at 1:00 a.m., without his lights, and only engaged his lights moments before the collision which caused the death and injuries for which he was convicted. It is highly likely that a jury would find that anyone, drunk or sober, and possessed of normal faculties, would realize that he or she could not drive on the wrong side of a divided highway in the middle of the night, without lights, without creating a "substantial and unjustifiable risk" that a motor vehicle accident will result and someone will be killed or suffer serious physical injuries. A risk that one's conduct will result in death or serious physical injury is of such a nature and degree, that disregard of that risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe. Nevertheless, to find harmless error on this ground would be, in effect, to direct a verdict of guilty on an element of the offense against the defendant, and this we may not do. *Francis v. Franklin,* 471 U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). While we might be prepared to find harmless error, under the totality of the circumstances, in the trial court's failure to give an instruction on the lesser-included offense of negligent homicide, we do not reach that issue because of our holding that the jury was erroneously instructed on recklessness.[3]

There is a substantial risk that a jury considering the instructions in this case would find St. John guilty of manslaughter by reasoning that St. John was in fact intoxicated, and that his intoxication sufficiently interfered with his driving to contribute to Reed's death. Such a juror would never have considered St. John's subjective knowledge of the risk, which is an element of the offense.[4] The error was,

---

3. In *Brown v. State,* 698 P.2d 671 (Alaska App. 1985), we recognized that a jury instruction that misstated the law of self-defense could be harmless beyond reasonable doubt if no instruction on self-defense was warranted by the facts. A jury instruction on self-defense was necessary if there was "some evidence" in the record supporting a defense theory of self-defense. 698 P.2d at 673. A similar rule governs instructions on lesser-included offenses. A trial court must instruct a jury on a lesser-included offense if there is some evidence in the record supporting it. St. John argues that he was entitled to an instruction on the lesser-included offense of negligent homicide, reasoning that there was some evidence in the record that he did not perceive the risks his driving entailed. In context, however, St. John points only to his intoxication, and expert evidence that a person with his blood-alcohol level would have been nearly unconscious. Since the legislature clearly precludes consideration of the degree of person's intoxication in determining whether he did or did not appreciate the risks his conduct entailed, it necessarily follows that a trial court would be within its discretion in rejecting a negligent homicide instruction in this case on the record as it was presented to the jury. We express no opinion as to whether a negligent homicide instruction would be appropriate on retrial, since we have no way of knowing what record will exist at the time jury instructions are under consideration.

4. In past cases, we have found harmless error where the court misdirected the jury on the elements of an offense, but the parties nevertheless tried the case on a theory which required the jury to make the proper findings in order to convict. *See Reynolds v. State,* 664 P.2d 621, 627–30 (Alaska App.1983). In this case, the state stressed the error in the jury instructions in its argument and the court acquiesced:

PROSECUTOR: If you find that defendant operated a motor vehicle at the time of the accident while under the influence of intoxicating liquor that is sufficient to establish recklessness on his part.

DEFENSE COUNSEL: Objection, Your Honor, counsel said to the jury that that is part of the definition of recklessness. It is not. It is not part of the definition in the statute.

THE COURT: It is not part of the statutory definition, that is true. It is, however, the law of this case. Thank you, [Defense Counsel] be seated. Carry on.

PROSECUTOR: The law of the state of Alaska which you were sworn to uphold is that driving drunk is reckless, *per se.* That is what Judge Ripley will instruct you on and you're sworn to follow the law.

therefore, not harmless and requires a reversal and remand for a new trial.

 Certain other issues may arise on retrial, and we will briefly address them. St. John argues that the trial court erred in denying his motion to suppress his medical records. The record reflects that the state learned that a blood-alcohol test was administered to St. John for medical reasons on the night of the fatal accident. Based on that and other information, the state procured a search warrant for St. John's medical records. St. John's medical records were not presented at trial. Therefore, the trial court's denial of his suppression motion is moot to that extent. The records were presented to the grand jury, however, and the results of the blood-alcohol test were also presented to the trial jury. We, therefore, address the issue. We are satisfied that the affidavit presented in support of the search warrant established probable cause to believe that St. John was driving while intoxicated and that his intoxication contributed to the death of Shelly Reed. St. John contends that the reliability of the emergency room physician, Dr. Vasileff, was not shown. The affidavit supporting the search warrant application relied upon statements from Dr. Vasileff to establish that St. John was intoxicated. The record establishes, however, that Dr. Vasileff was a citizen informant and a treating physician. Under the circumstances, it was not necessary to independently establish his reliability. *See, e.g., State v. Jones,* 706 P.2d 317, 325 (Alaska 1985) (reliability of citizen informant may be inferred if some details of information furnished by the informant are verified). Finally, we see no double hearsay problems. *Bradley v. State,* 662 P.2d 993, 996 (Alaska App.1983) (no error in admitting hospital blood test as business record). *See also Resek v. State,* 644 P.2d 877, 879 & n. 1 (Alaska App.1982) (treating double hearsay problems in search warrant applications). The warrant was not a "general warrant" and the physician-patient privilege does not apply in criminal proceedings. A.R.E. 504(d)(7).[5]

 St. John next argues that the state's failure to procure and preserve a sample of his blood violated his due process right. He relies on *Lauderdale v. State,* 548 P.2d 376 (Alaska 1976) and *Anchorage v. Serrano,* 649 P.2d 256 (Alaska App. 1982). *Lauderdale* and *Serrano* establish a duty to preserve the ampules from a breath test so that the defendant may make an independent test. St. John analogizes the sample of his blood taken by Providence Hospital to a breath test ampule and reasons that the state was under a duty to preserve the blood sample. We disagree. *See Bradley v. State,* 662 P.2d 993 (Alaska App.1983). The blood test in this case was done by hospital personnel on St. John's behalf for medical reasons, and not by a police agency for the purpose of prosecuting St. John. *See Russell v. Anchorage,* 706 P.2d 687, 693 (Alaska App. 1985). Consequently, there was no violation of the *Lauderdale-Serrano* rule.

 Nor do we find any violation of St. John's rights under the corresponding due process clauses of the state and federal constitutions. In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that the prosecutor is required to disclose evidence to a criminal defendant that is favorable to the accused and material either to guilt or punishment. In *United States v. Bagley,* 473 U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), a majority of the United States Supreme Court concluded that in order for a criminal defendant to avail himself of relief under *Brady,* he must show that governmental action deprived him of "material evidence." Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. 473 U.S. at ——, 105 S.Ct. at 3384, 87 L.Ed.2d at 494 (opinion of

---

**5.** St. John argues that he has a privacy interest under the state constitution in the contents of his medical records. *See, e.g., Falcon v. Alaska Public Offices Comm'n,* 570 P.2d 469 (Alaska 1977). He argues that this privacy interest precludes a search warrant for the results of the blood-alcohol test. We disagree. Any privacy interest St. John has in his medical records is more than accomodated by the procedures leading to the issuance of the search warrant.

Blackmun and O'Connor, J.J.) and 473 U.S. at —, 105 S.Ct. at 3385, 87 L.Ed.2d at 496 (opinion of White and Rehnquist, J.J. and Burger, C.J.). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." 473 U.S. at —, 105 S.Ct. at 3384, 87 L.Ed.2d at 494 (opinion of Blackmun and O'Connor, J.J.). The Alaska Supreme Court has adopted a similar standard of materiality, at least where, as here, the state is under no specific duty, derived from rule or case, to preserve the evidence in question. *See Putnam v. State,* 629 P.2d 35, 43–44 (Alaska 1980); *Carman v. State,* 604 P.2d 1076, 1080–81 (Alaska 1979) (recognizing that materiality test is essentially one of harmless error). St. John has not shown that preserving a blood sample for a retest by him would probably have affected the outcome of his trial. The record reflects that the blood sample was drawn and the test administered in the ordinary course of business at Providence Hospital, in order to safeguard St. John's life. There is no evidence, direct or circumstantial, that the tests performed were in any way inaccurate or that a retest by someone else would have resulted in exculpatory evidence. We are satisfied that the absence of an additional test did not substantially affect the jury's verdict. *Love v. State,* 457 P.2d 622, 630 (Alaska 1969). Under the circumstances, the trial court did not err in rejecting St. John's challenge to the admissibility of the blood test.[6]

■ St. John argues that the state knowingly presented false information to the grand jury. St. John points to statements by the pathologist in response to a grand juror's question as to whether Shelly Reed was subjected to a blood-alcohol or drug test. Dr. Propst responded:

> No alcohol was detected at all. The drug screen detected the presence of a proprietary medications found in an [sic] over-the-counter decongestants, but spe-

cifically, the drugs identified were ephedrine and phenylpropanolamine. Those are the kinds of things that any decongestant might have in them [and] are available across the counter.

St. John points out that at the time of the grand jury, the state had information from Victoria Peterson and Karen Wuitschick, the passengers in Shelly Reed's car, that Reed had at least one beer and some "speed" before the car accident. St. John argues that the prosecutor "knowingly allowed [Dr. Propst's] testimony to be presented without correcting it, in response to a direct question by a grand juror, in spite of the obviously misleading effect which it was sure to have on the grand jury." Dr. Propst's testimony was not incorrect. He testified to the same effect at trial. He was reporting the results of laboratory tests he performed on the victim, Shelly Reed. It is certainly possible that the beer she consumed earlier that evening did not show up in her blood test and that the "speed" her friends thought she had consumed was the ephedrine and phenylpropanolamine which Dr. Propst indicated are commonly found in decongestants sold over the counter. It is unlikely that disclosure of evidence from Reed's passengers about the "speed" and beer would have led the grand jury not to return an indictment. *See Wren v. State,* 577 P.2d 235, 238 (Alaska 1978) (contributory negligence of victim is not a defense in a criminal prosecution). We find no error. *See, e.g., Frink v. State,* 597 P.2d 154 (Alaska 1979).

■ Finally, St. John argues that he was entitled to a judgment of acquittal. His argument borders on the frivolous. Uncontraverted evidence that he was operating a motor vehicle with a blood-alcohol level of .320, while driving the wrong way down a divided highway with his lights out at 1:00 a.m., clearly established a *prima facie* case of manslaughter. Judge Ripley did not err in sending the case to the jury.[7]

---

**6.** St. John argues that illegal seizure of his medical records invalidated the grand jury indictment. We have previously held that the search warrant authorizing seizure of the medical records was properly issued. There is, therefore, no merit in this argument.

**7.** St. John also claims error due to alleged improper remarks by the prosecutor during closing rebuttal argument. We have reviewed the trial transcript and conclude that the trial court's decision not to grant a mistrial was within its discretion. Any damage done was

St. John's conviction is REVERSED and the case is REMANDED for a new trial.[8]

COATS, J., not participating.

corrected by Judge Ripley's swift intervention and instruction to the jury to disregard the prosecutor's remark.

**8.** St. John argues that his presumptive sentence of five years was imposed in violation of the United States and Alaska Constitutions. Our decision to reverse makes it unnecessary to reach those issues in this case. We note, however, that this argument is foreclosed by our recent decision in *Dancer v. State,* 715 P.2d 1174, (Alaska App., 1986).