**Michael SIMPSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2825.**

Court of Appeals of Alaska.

Aug. 24, 1990.

Glenn E. Cravez, Cravez & Weber, Anchorage, for appellant.

Valerie Van Brocklin, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON,* JJ.

## OPINION

BRYNER, Chief Judge.

Michael Simpson was convicted by a jury of one count of first-degree sexual abuse of a minor, three counts of second-degree sexual abuse of a minor, and three counts of contributing to the delinquency of a minor. Superior Court Judge Karl S. Johnstone sentenced Simpson to a presumptive term of eight years for first-degree sexual abuse of a minor. The judge imposed suspended sentences of two years for each of the three counts of second-degree sexual abuse of a minor, making those sentences concurrent to each other but consecutive to the eight-year unsuspended term. For the three counts of contributing to the delinquency of a minor, Judge Johnstone imposed six-month terms, making them concurrent to all other sentences. Simpson appeals his conviction, claiming that the prosecution improperly shifted the burden of proof during its closing argument. Simpson also challenges the sentence that he received for first-degree sexual abuse, arguing that Judge Johnstone erred in rejecting two proposed mitigating factors and that the three-judge panel erred in declining jurisdiction. We affirm.

---

* This case was submitted for decision prior to   Judge Singleton's resignation.

Simpson became involved with adolescent boys through his work at the Alaska Children's Services Emergency Shelter and as a foster parent. His involvement led to the charges of sexual abuse and contributing to the delinquency of a minor for which he was ultimately convicted. Two of Simpson's victims, V.Q. and J.N., were his foster children. Two others, R.B.S. and M.C.S., met Simpson at the emergency shelter.

The controversy in this case involves Simpson's fourteen-year-old foster child, V.Q., whose accusation led to the conviction of first-degree sexual abuse. According to V.Q., Simpson frequently wrestled with him and with other boys in his home. Simpson and the boys started grabbing one another's penises. Simpson gradually proceeded to touch V.Q. underneath his underwear. Simpson would also rub his genitals into V.Q.'s face during the wrestling matches. V.Q. claimed that one evening Simpson was at home with him and they were drinking beer and watching X-rated films. V.Q. became intoxicated and went to bed. Simpson entered his room, pulled off V.Q.'s underwear, and sucked his penis until V.Q. ejaculated. Simpson also attempted to digitally penetrate V.Q.'s anus. At the time of the offense, V.Q. was fourteen years of age.

V.Q. first revealed his claim of sexual abuse to his social worker, Linda Gonzales. Gonzales later spoke with Simpson about the accusation. At trial, Gonzales testified that when she confronted Simpson with the fact that V.Q. had accused him of sexual abuse, Simpson was unable to think of any reason why V.Q. would make such a claim.

Simpson testified on his own behalf at trial, however, and expressly claimed that V.Q. had falsely accused him of sexual abuse in order to get transferred to another foster home. In his testimony, Simpson alleged that V.Q. had previously made false accusations of abuse to fit his needs. Simpson said that V.Q. had once alleged that a staff member at the Booth Home had sexually abused him. Upon further questioning, however, Simpson acknowledged that he had no direct knowledge of

the prior false claims of abuse and that he had just heard about it somewhere. Nevertheless, Simpson continued to characterize V.Q. as a manipulative child skilled at working the system.

During its closing argument to the jury, the prosecution attempted to discredit Simpson's testimony concerning V.Q.'s prior false claims of abuse:

Well, remember what [Simpson] told Linda Gonzales that day. He couldn't think of a reason why [V.Q.] would make this up. He didn't know why [V.Q.] would make this up. But he comes in here, into court, with the same information that he had the day he went to talk to Linda Gonzales. And, suddenly, he's got a litany of reasons why. And let's examine one of those reasons why.

This is about [V.Q.] making allegations before that fit his need and abuse, and physical abuse, and sexual abuse against the staff person at Booth. There was not one shred of evidence that [V.Q.] has ever made another allegation of sexual abuse against any person; other than him. Not a shred. There was a question, but questions aren't evidence. And nobody came in here to contradict that; not one single person. And that's really important.

Defense counsel objected, claiming that the prosecution was shifting the burden of proof. Judge Johnstone allowed argument to continue.

On appeal, Simpson renews his argument that the prosecutor's comment impermissibly shifted the burden of proof. We disagree.

In this case, the prosecutor did not fault Simpson for failing to call witnesses or produce evidence. Neither did the prosecutor claim or imply that the burden of proof on any element of the offense lay with Simpson. Rather, the prosecutor merely commented on the lack of evidence in the record to support a claim that Simpson had expressly made based on information that Simpson himself had conceded to be second hand. There is nothing improper in pointing out deficiencies in the defendant's own testimony or in comment-

ing on failure of the evidence to support the defendant's version of events. *See United States v. Bubar,* 567 F.2d 192, 199 (2d Cir.1977); *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir.1955); *Newell v. Slayton,* 350 F.Supp. 905, 907 (E.D.Va. 1971); *State v. McGonigle,* 103 Ariz. 267, 271, 440 P.2d 100, 104 (1968). We find no error.[1]

Simpson separately challenges the eight-year presumptive term that he received for sexual abuse of a minor in the first degree. He first alleges that Judge Johnstone erred in rejecting two proposed mitigating factors: that his conduct was among the least serious in its class. AS 12.55.-155(d)(9); and that the harm caused by his current and prior offenses has been consistently minor and inconsistent with a substantial term of imprisonment, AS 12.55.-155(d)(13).

■ Simpson's claim that his conduct was among the least serious in its class is largely predicated on the contention that, because V.Q. was fourteen years old, Simpson's act of fellatio would have amounted only to sexual abuse of a minor in the second degree if V.Q. had not been in Simpson's foster care. Simpson's argument is based on the faulty premise that a person who commits first-degree sexual abuse of a minor by molesting an older child who is in his foster care, in violation of AS 11.41.434(a)(2)(A), is guilty of less serious conduct than a person who commits the same offense by violating AS 11.41.-434(a)(1), which prohibits sexual penetration with younger children regardless of parental or custodial status. However, because the legislature includes various acts within the definition of the same offense, sexual abuse of a minor in the first degree, each act must presumptively be regarded as equally serious. *See Walsh v. State,* 677 P.2d 912, 916–17 (Alaska App. 1984); *Juneby v. State,* 641 P.2d 823, 841

(Alaska App.1982), *modified on other grounds,* 665 P.2d 30 (Alaska App.1983).

■ Simpson also maintains that his conduct was among the least serious within its class because it did not involve violence. While the existence of violence and physical injury may amount to an aggravating factor, *see Woods v. State,* 667 P.2d 184, 187–88 (Alaska 1983), the absence of violence does not place Simpson's conduct among the least serious in its class, since the typical child sexual abuse case involves little or no violence.

■ Simpson lastly claims that his conduct was among the least serious because V.Q. apparently suffered only minimal effects from the abuse. As Judge Johnstone correctly noted, however, the effects of sexual abuse on children are not always readily apparent. In the present case, the sentencing court did not err in concluding that there was no clear and convincing evidence that Simpson's conduct would not have a lasting effect on V.Q.

■ Simpson relies on similar arguments in claiming that the sentencing court erred in rejecting his second proposed mitigating factor: that the harm caused by his conduct in past and present cases has been consistently minor and does not warrant a substantial sentence of imprisonment. Simpson, however, was a first offender and had no history of misconduct. To the extent that the mitigating factor specified in AS 12.55.155(d)(13) could apply in his case, it would substantially merge with the "least serious" conduct mitigating factor specified in AS 12.55.155(d)(9). *See Allen v. State,* 769 P.2d 457, 459 n. 1 (Alaska App.1989); *Johnson v. State,* 762 P.2d 493, 495–96 (Alaska App.1988). Our rejection of that factor is dispositive of Simpson's claim.

■ Simpson also claims that the three-judge sentencing panel erred in rejecting jurisdiction over his case. Judge John-

---

1. Simpson attempts to analogize the prosecutor's remarks to cases involving comment on the defendant's failure to present a particular witness at trial. *See, e.g., McCurry v. State,* 538 P.2d 100 (Alaska 1975); *Marrone v. State,* 359 P.2d 969 (Alaska 1961). As we have noted,

however, the prosecutor simply did not accuse Simpson of failing to produce particular witnesses or imply that he had the burden of so doing. Simpson's analogy to this line of cases is therefore not apt.

stone, after rejecting Simpson's proposed statutory mitigating factors, found that Simpson had exceptionally good prospects for rehabilitation and referred his case to the three-judge panel on that ground. *See Smith v. State*, 711 P.2d 561, 570–71 (Alaska App.1985). The panel heard extensive evidence and argument on the case. In general, the evidence described Simpson as a genuinely dedicated care-giver who was incapable of committing sexual abuse.

The three-judge panel, expressing concern that no psychological information had been submitted to support Simpson's claim and that Simpson persistently and adamantly denied any sexual contact, concluded that Simpson had failed to prove that his potential for rehabilitation was exceptional. The panel found that Simpson's good reputation among his co-workers and his strong family support did not suffice as clear and convincing evidence to support his claim.

■ The three-judge panel has substantial discretion in determining whether to modify presumptive sentences; this court will disturb that discretion only if its exercise was clearly mistaken. *Winther v. State*, 749 P.2d 1356, 1360 (Alaska App. 1988). The panel's findings of fact are reviewed only for clear error. *Id.* at n. 1. Here, we have carefully reviewed the record and conclude that the panel was not clearly erroneous in concluding that Simpson failed to establish by clear and convincing evidence that his prospects for rehabilitation were exceptionally good. *See Kirby v. State*, 748 P.2d 757, 765–66 (Alaska App.1987); *Winther*, 749 P.2d at 1358. We have independently reviewed the entire sentencing record and find that the sentence imposed below was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The judgment is AFFIRMED.