Lewis JORDAN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5094.

Court of Appeals of Alaska.

May 19, 1995.

Hearing Denied Aug. 3, 1995.

Linda K. Wilson, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Eric A. Johnson, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Lewis Jordan was tried by jury and convicted of criminal mischief in the third degree. Superior Court Judge Karen L. Hunt sentenced Jordan to serve three years in prison. Jordan appeals, claiming that the superior court erred in limiting his cross-examination of the police officer who arrested him. Jordan also appeals his sentence, arguing that the sentencing court improperly rejected two proposed mitigating factors. We affirm.

On the night of January 22, 1993, Anchorage Police Officer Elmo Hill was on patrol in Anchorage when he noticed an oncoming Ford Escort driving at a suspiciously slow speed. Four people were in the car, and Hill obtained a good look at the driver as the Escort passed his own patrol car. Hill noticed that the Escort's license tags were expired. He turned his car around and followed. The Escort turned abruptly into an alley. By the time Hill reached the alley, the Escort had stopped; its driver and two of its three passengers had gotten out and were running away, down the alley.

Hill radioed for assistance and contacted the Escort's lone remaining passenger, Brian Buckle, who was in the backseat. Other officers soon apprehended two of the Escort's three fleeing occupants, Jordan and Johnny Caldwell. The other occupant managed to escape. A registration check established that the Escort had been stolen several days previously. Buckle and Caldwell told the police that Jordan had been driving. Officer Hill recognized Jordan as the man he had seen behind the wheel.

Based on Hill's identification of Jordan as the driver of the stolen Escort, Jordan was arrested and charged with criminal mischief in the third degree (joyriding), in violation of AS 11.46.484(a)(2). Because Jordan had previously been convicted of joyriding, he was subject to conviction for a felony on the new charge. AS 11.46.484(c)(1).[1]

At trial, the state did not attempt to call Buckle or Caldwell or to admit evidence of their out-of-court statements identifying Jordan. In order to establish that Jordan had driven the stolen Escort, the state relied exclusively on Hill's testimony identifying Jordan as the driver.

Buckle's and Caldwell's out-of-court statements did come up, however, during Jordan's cross-examination of Hill. Prior to cross-examining Hill, Jordan asked the court to allow him to question Hill about Buckle's and Caldwell's statements. He offered to show that, before Hill made his own identification of Jordan as the driver of the Escort, Hill had heard both men say that Jordan had been driving. Jordan argued that this line of inquiry would be relevant to challenge the reliability of Hill's testimony identifying him as the driver, since it would tend to show that Hill had simply accepted Buckle's and Caldwell's statements and had not actually seen Jordan behind the wheel of the car.

The state objected, arguing that Buckle's and Caldwell's statements were hearsay. In response, Jordan assured the court that the statements would not be hearsay because they were not being offered for their substantive truth—that is, to show that Jordan had in fact been the driver—but rather to cast doubt on Hill's identification by suggesting an alternative basis for Hill's decision to charge Jordan. Judge Hunt permitted this line of inquiry, expressly accepting Jordan's assertion that Buckle's and Caldwell's crime-scene statements were not being offered for their substantive truth.

. . . .

1. AS 11.46.484 provides, in relevant part:

 **Criminal mischief in the third degree.** (a) A person commits the crime of criminal mischief in the third degree if, having no right to do so or any reasonable ground to believe the person has such a right

 . . . .

 (2) the person drives, tows away, or takes the propelled vehicle of another[.]

 (c) A person convicted under (a)(2) of this section is guilty of a class C felony if, within the preceding seven years, the person was convicted under

 (1) the provisions of (a)(2) of this section[.]

Jordan was less successful in a second aspect of his defense strategy. In connection with his request to cross-examine Hill concerning Buckle's and Caldwell's identification of Jordan as the driver of the stolen Escort, Jordan sought to question Hill about Buckle's and Caldwell's criminal records. Both men had prior convictions for theft-related offenses. Caldwell, in particular, had previously been convicted of joyriding. Jordan argued that by establishing these prior convictions through cross-examination of Hill, he could show that Buckle and Caldwell both had a strong motive to fabricate their claims against Jordan and that, for this reason, Hill should not have relied upon those claims. Jordan further argued that the prior convictions, especially Caldwell's joyriding conviction, would show that Hill's investigation of the incident had been sloppy and incomplete, since, if Hill had investigated the prior criminal histories of all three men, he would have discovered that Caldwell was a more likely suspect than Jordan.

Judge Hunt declined to allow Jordan's proposed inquiry into Buckle's and Caldwell's prior convictions. The judge reasoned that Buckle's and Caldwell's credibility was irrelevant, since their out-of-court identifications were not being offered for their substantive truth. Judge Hunt further reasoned that admission of the prior convictions to suggest that Buckle or Caldwell might have been driving the Escort would amount to an impermissible use of the prior convictions as propensity evidence.

In accordance with the court's rulings, Jordan questioned Hill about Caldwell's and Buckle's out-of-court statements. Hill acknowledged that both men had identified Jordan as the driver of the Escort before Hill made his own identification. On redirect examination, however, Hill insisted that the driver was Jordan.[2] Jordan later attempted to call Caldwell as a witness. Caldwell asserted his privilege against self-incrimination

and declined to take the stand. However, Jordan did call Harry Woods, Jr., an acquaintance of Caldwell, who testified that Caldwell had admitted stealing the car and had left Woods' house driving it earlier on the day of Jordan's arrest.

On appeal, Jordan claims that the trial court erred in precluding him from cross-examining Hill concerning the prior convictions. Focusing primarily on Caldwell, Jordan argues, as he did below, that this line of inquiry was admissible "to prove Caldwell's motive to fabricate and his identity as the driver." Jordan maintains that the trial court's preclusion of this evidence violated his constitutional right to confrontation.

Jordan's argument is largely governed by Alaska Rule of Evidence 806, which provides, in relevant part:

## Attacking and Supporting Credibility of Declarant.

When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E) [admissions by a party-opponent], has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. . . .

The effect of this rule is to treat the declarant of an out-of-court statement the same as a live witness for purposes of impeachment, but only if the declarant's statement is admitted for the truth of the matter asserted therein:

If a hearsay statement is introduced into evidence because it qualifies as an exception to the hearsay rule, it is being introduced for its truth. This makes the credibility of the hearsay declarant important. Thus, Rule 806 provides that the credibility of the hearsay declarant can be attacked and supported just as if the declarant is on

---

2. At the outset of trial, the state offered to have Hill testify that he had had previous encounters with Jordan and therefore immediately recognized Jordan when he saw him driving the Escort. Judge Hunt barred this testimony as more prejudicial than probative. After the court ruled that Jordan would be allowed to impeach Hill's identification by inquiring into Buckle and Caldwell's out-of-court statements, the state renewed its request that Hill be allowed to clarify his basis for identifying Jordan. The trial court declined to reconsider its original ruling. The state does not dispute this ruling on appeal.

the stand testifying. In other words, the ways in which a witness can be impeached and rehabilitated are also the ways in which a hearsay declarant can be impeached and rehabilitated.

If a declarant's statement is not being offered for its truth, then it is not hearsay, and impeachment of the declarant is not permitted under Rule 806. This makes sense, because if the statement is not offered for its truth, there is no concern about the credibility of the declarant, and so there is no need for evidence on that subject.

3 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual,* at 1674 (6th ed. 1994) (footnote omitted) (commenting on identical language of Federal Rule of Evidence 806). [Hereinafter *Saltzburg.*]

In deciding the present case, we assume evidence of Buckle's and Caldwell's prior convictions would have tended to establish that both men had a motive to falsely accuse Jordan, thereby impeaching the credibility of their statements identifying Jordan as the driver of the Escort.[3] Likewise, we assume that Buckle and Caldwell both had past convictions for crimes of dishonesty that would have served to impeach their general credibility had they testified. *See* A.R.E. 609(a).[4] Yet neither Caldwell nor Buckle was in any sense a witness at Jordan's trial—either through personal testimony or through the admission of a hearsay statement.

 As Jordan acknowledged below and still acknowledges on appeal, Buckle's and Caldwell's out-of-court statements were not offered as hearsay—that is, for their truth— but rather as nonhearsay. There was thus "no concern about the credibility of" these declarants, and "no need for evidence on [the] subject." *Saltzburg* at 1674. *See also United States v. Martinez,* 979 F.2d 1424, 1429 (10th Cir.1992); *United States v. Price,* 792 F.2d 994, 996–97 (11th Cir.1986).[5]

Jordan alternatively argues that, even if the disputed prior-convictions evidence was not admissible under A.R.E. 806 to impeach Buckle and Caldwell, he remained free to introduce it in order to establish that one of the two might have driven the Escort. More specifically, Jordan asserts that Caldwell's prior joyriding conviction makes it likely that Caldwell was the driver of the Escort, and

3. We note, however, that regardless of whether Buckle or Caldwell had previously been convicted, both already had an obvious motive to fabricate since they, too, had been in the stolen Escort when it was stopped, and since both presumably wanted to avoid prosecution. Under the circumstances, it would be arguable that even Caldwell's prior joyriding conviction, which subjected him to prosecution for a felony as opposed to a misdemeanor, would have added little to his obvious motive to avoid any criminal charge at all.

4. Alaska Rule of Evidence 609(a) provides:

 (a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is only admissible if the crime involved dishonesty or false statement.

5. Since Hill never purported to base his identification on the statements of Buckle or Caldwell, the potential unreliability of their allegations had no bearing on Hill's own credibility. Jordan does not claim that evidence of Buckle's or Caldwell's prior convictions would in any way have been relevant to show motive, bias, or prejudice on Officer Hill's part. If, as the basis for his identification of Jordan, Officer Hill had adopted Buckle's and Caldwell's statements naming Jordan as the driver of the Escort, then impeachment of Buckle and Caldwell might have been permissible under A.R.E. 806. *See, e.g., United States v. Moody,* 903 F.2d 321, 328–30 (5th Cir. 1990); *Price,* 792 F.2d at 997. However, Hill disclaimed any reliance on these statements.

In his reply brief, Jordan does point out that the trial court gave no limiting instruction prohibiting the jury from considering the out-of-court identifications for their truth. Had the state offered these statements into evidence against Jordan, the lack of a limiting instruction might be significant. *Cf. United States v. Burton,* 937 F.2d 324, 328 (7th Cir.1991). But here, Jordan in effect introduced the statements against himself and, in so doing, affirmatively argued they were admissible as nonhearsay. As both the proponent of the statements and the party who ostensibly stood to be damaged if the statements were considered for their truth, Jordan was clearly in the best position to insist on a proper limiting instruction. His failure to do so cannot serve as a predicate for him to argue that the statements were available as substantive evidence and were therefore subject to impeachment. As pointed out by *Saltzburg, supra* at 1677, "Courts have held that a party cannot introduce an adverse hearsay statement, and then invoke Rule 806 to 'impeach' the hearsay declarant with evidence that would not otherwise be admissible[.]" *See also United States v. Finley,* 708 F.Supp. 906, 910–11 (N.D.Ill.1989).

Jordan argues that Caldwell's prior conviction should have been admitted to establish this likelihood.

 Under A.R.E. 404(b), however, evidence of a person's prior misconduct is inadmissible unless it is probative of some disputed fact other than the person's general propensity to engage in similar misconduct.[6] And even if relevant for a purpose other than propensity, such evidence is subject to exclusion under A.R.E. 403 if its potential for prejudice outweighs its legitimate probative value.[7] Jordan recognizes the usual rule excluding prior misconduct evidence as proof of current misconduct, but he argues that the usual rule of exclusion should be relaxed when the accused seeks to introduce evidence of prior misconduct against a witness.

 Jordan is correct in his assertion that prior-misconduct evidence should be more liberally admitted when it is offered against a witness instead of the accused. *See Garner v. State,* 711 P.2d 1191, 1195 n. 3 (Alaska App.1986); *United States v. McClure,* 546 F.2d 670, 673 (5th Cir.1977); *State v. Conlogue,* 474 A.2d 167, 172–73 (Me.1984). This relaxed standard, however, reflects the change in the A.R.E. 403 balance of probative value and prejudicial impact that usually occurs when prior-misconduct evidence relates to a witness instead of the accused. To reach the relaxed A.R.E. 403 balancing analysis, the accused must first establish, under A.R.E. 404(b), that the proffered evidence relates to some issue other than propensity. *United States v. Cohen,* 888 F.2d 770, 776 (11th Cir.1989).

 Here, Jordan asserts that evidence of Caldwell's prior convictions, especially the joyriding conviction, is relevant to two issues other than propensity: to Caldwell's motive

to fabricate and his identity as the driver of the Escort. As we have already indicated, Caldwell's motive to fabricate is relevant to no disputed issue because Caldwell did not testify and his out-of-court statement was not admitted for its truth. Caldwell's prior joyriding conviction would be relevant to establish his identity as the driver only if the circumstances of the previous case were so similar to the current case as to disclose a unique *modus operandi. See Adams v. State,* 704 P.2d 794, 798 (Alaska App.1985). Absent circumstantial similarities sufficiently unique to constitute a "signature crime," a prior conviction for a similar offense tends to establish identity only through the impermissible inference of propensity: "[M]uch more is demanded than the mere repeated commission of crimes of the same class, such as burglaries or thefts." Vaugh C. Ball et al., *McCormick on Evidence* § 190, at 449 (Edward W. Cleary ed. & 2d ed. 1972) (footnotes omitted), *quoted in Adams,* 704 P.2d at 798 n. 5. The bare evidence of Caldwell's prior joyriding conviction—all that Jordan offered in this case—was not relevant to the issue of identity apart from its tendency to prove propensity. For this reason, Judge Hunt properly excluded it.

Jordan additionally appeals his sentence. Jordan's offense was a class C felony and, as such, was punishable by a maximum of five years' imprisonment. AS 11.46.484(c); AS 12.55.125(e). Jordan had two prior felony convictions and was therefore subject to a presumptive term of three years in prison. AS 12.55.125(e)(2). Judge Hunt found one aggravating factor (that Jordan was on probation at the time of this offense, AS 12.55.155(c)(20)), rejected two mitigating factors proposed by Jordan, and imposed the presumptive sentence.

---

6. A.R.E. 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show tht [sic] the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

7. A.R.E. 403 provides:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

██ Jordan claims that Judge Hunt erred in rejecting his two proposed mitigating factors: that his conduct in the current case was among the least serious included in the definition of third-degree criminal mischief (AS 12.55.155(d)(9)) and that the harm caused by his prior and current offenses is consistently minor and inconsistent with the imposition of a substantial period of imprisonment (AS 12.55.155(d)(13)). As the proponent of these factors, Jordan bore the burden of proving them by clear and convincing evidence. AS 12.55.155(f); *Mancini v. State*, 841 P.2d 184, 188 (Alaska App.1992). The sentencing court's acceptance or rejection of aggravating or mitigating factors will be upheld unless clearly erroneous. *Lepley v. State*, 807 P.2d 1095, 1099 (Alaska App.1991).

██ In arguing that his current offense is among the least serious in its class, Jordan points out that he was convicted only of driving a stolen car, not of stealing it, and that Officer Hill only saw Jordan driving it for a few seconds. Jordan also points out that the car was not damaged. By definition, however, joyriding involves only temporary taking, driving, or towing of a stolen vehicle. Moreover, the fact that Hill observed Jordan only briefly hardly constitutes clear and convincing evidence of how long Jordan had actually been driving. Nor does the undamaged condition of the car amount to clear and convincing evidence that it would have remained undamaged had Jordan not been apprehended. In any event, if Jordan had damaged the car, he would have been guilty of committing an additional offense. In rejecting this proposed mitigating factor, Judge Hunt found that Jordan's conduct was neither the most aggravated nor the most mitigated joyriding; the judge found it to be "[a]

typical offense by a typical offender." This finding is not clearly erroneous.

██ Jordan's second proposed factor, as spelled out in AS 12.55.155(d)(13), calls for a two-pronged determination: first, the court must determine on a case-by-case basis that the defendant's present and prior crimes are consistently minor; second, the court must find that the past and present crimes, taken as a whole, are inconsistent with a substantial term of imprisonment. *See Mancini*, 841 P.2d at 188. Because the first prong of factor (d)(13) focuses on the seriousness of Jordan's current and past crimes, requiring a finding of minor harm for each offense, our conclusion that his current offense is not among the least serious in its class precludes finding that the mitigating factor has been established. *Cf. Simpson v. State*, 796 P.2d 840, 843 (Alaska App.1990). Moreover, Judge Hunt was not clearly erroneous in finding that Jordan's prior felonies were not unusually mitigated.[8]

██ Jordan fares no better under the second prong of mitigating factor (d)(13), which focuses on the seriousness of Jordan's criminal history as a whole. In addition to his two prior felony convictions, Jordan, who was twenty-two years old when he committed the current offense, has been convicted of seven misdemeanors, including shoplifting, failure to appear, criminal mischief, criminal trespass, and disorderly conduct. Since being placed on supervised probation following his first felony conviction in 1989, Jordan has repeatedly violated the conditions of his probation. Viewing Jordan's criminal history as a whole, Judge Hunt could properly find that the totality of the harm caused by Jordan's past and current crimes was not inconsistent with a substantial term of imprisonment.

---

**8.** Jordan's first felony conviction was for criminal mischief in the third degree. The offense involved the theft of a motor vehicle by Jordan and Caldwell. The owner of the vehicle pursued the two men; when he overtook them, Caldwell threw a rock at the owner, causing him to sustain a substantial injury to his hand. Judge Hunt recognized that, although Jordan did not personally cause the injury, the injury was nonetheless a foreseeable consequence of the theft and could properly be considered as part of the harm caused by Jordan's misconduct. Jordan's second

felony conviction was for misconduct involving a weapon in the third degree (felon in possession). Jordan was stopped and arrested on a warrant for violating the conditions of his probation; he was found to be in possession of a .22 caliber pistol. Although the pistol was unloaded, Jordan was also in possession of .22 caliber bullets. He subsequently acknowledged that, at the time of his arrest, he was consuming approximately $700 in cocaine on a daily basis and was stealing to obtain money to support his habit.

We find no clear error in the rejection of factor (d)(13).

Having independently reviewed the entire sentencing record, we conclude that the sentence imposed below is not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence are AFFIRMED.