NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ROBERT THOMAS SHEDLOSKY,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals Nos. A-12821 & A-12879
Trial Court Nos. 3PA-16-00867 CR
& 3AN-10-04211 CR

O P I N I O N

No. 2673 — August 14, 2020

Appeal in File No. A-12821 from the Superior Court, Third Judicial District, Palmer, Vanessa H. White, Judge. Appeal in File No. A-12879 from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Marilyn J. Kamm (opening brief), and Margot Knuth (reply brief), Attorneys at Law, Anchorage, under contract with the Office of Public Advocacy, for the Appellant. Michal Stryszak, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD.

Robert Thomas Shedlosky was convicted of third-degree assault under a recidivist theory for assaulting his ex-girlfriend, Sophie Batt.[1] On appeal, he contends that the trial court erred when it admitted evidence of four prior assaults. Shedlosky also challenges his sentence and asks us to reverse the revocation of his probation. For the reasons explained here, we affirm Shedlosky's conviction and sentence and the revocation of his probation.

*Factual Background*

Shedlosky and Batt met around 2006 and dated for about six or seven years. After their break up, they remained friends and would "walk and talk and drink." On April 15, 2016, Shedlosky and Batt spent hours drinking in Anchorage before heading to Wasilla, where they ultimately visited Shedlosky's friend, Rodney Rhodes. After Batt retired to Rhodes's bedroom to sleep, Shedlosky shook her awake. Shedlosky started beating and punching Batt. He threw her off the bed and kicked her a couple of times, calling her names and demanding to know if she wanted to "F Rodney."

Rhodes awoke to Shedlosky "smacking" Batt around. He called 911 and asked the dispatcher to send police officers over to his apartment "right away" because his friend was "beating the hell out of [Batt]." Rhodes also stated that "they're beating each other up," and he later said that Shedlosky was "killing her."

At trial, Shedlosky argued that he acted in self-defense. Shedlosky did not testify. Instead, Shedlosky relied on Rhodes's statement in the 911 call that "they're beating each other up" to support his self-defense claim. Rhodes testified that he only witnessed Shedlosky beating up Batt and that he did not see Batt hitting Shedlosky.

---

[1]  *See* AS 11.41.220(a)(5) (recklessly causing physical injury to a person, having been convicted within the preceding ten years on two or more separate occasions of crimes with elements similar to AS 11.41.230(a)(1) or (2)).

Rhodes also testified that he had misspoken on the 911 call when he stated that Shedlosky and Batt were "beating each other up."

Ultimately, the jury rejected Shedlosky's self-defense claim and convicted Shedlosky of third-degree assault under a recidivist theory.

*Underlying facts related to the admission of Shedlosky's prior assault convictions*

Before trial, the State filed a notice of intent to introduce Shedlosky's prior assault convictions. Shedlosky opposed. At a pretrial hearing on the motion, the State made an offer of proof as to four specific incidents it sought to present at trial. The first two assaults involved Shedlosky beating Batt because he was jealous that she might be interested in other men. The third and fourth assaults involved Shedlosky, again motivated by jealousy, beating up other men.

After considering the State's offer of proof, the court found that Shedlosky's prior assaults were admissible for several reasons.[2] The court found that the

---

[2] We note that the prosecutor's motion erroneously asserted that these assaults were admissible under Alaska Evidence Rule 404(a)(2) to rebut Shedlosky's self-defense claim. The trial court also erroneously ruled that these prior acts were admissible under Alaska Evidence Rule 405(b). Both the prosecutor and the trial court were mistaken. Although Rule 404(a)(2) authorizes trial courts to admit character evidence to rebut a claim that the victim was the first aggressor, this evidence is limited to reputation and opinion evidence. Evidence of specific instances of conduct is not permitted under Rule 404(a)(2) except on cross-examination. *See* Alaska Evid. R. 404(a)(2); Alaska Evid. R. 405(a); *see also Allen v. State*, 945 P.2d 1233, 1243 (Alaska App. 1997) (noting that Rule 405(a) allows proof of a person's character for violence admissible under Rule 404(a)(2) to be established through reputation and opinion evidence). The trial court was also mistaken in believing that the specific instances of conduct were admissible under Rule 405(b). That evidence rule is limited to cases in which a defendant's character is "an essential element" of a charge, claim, or defense. *See* Alaska Evid. R. 405(b). Although both the prosecutor and the trial court were

(continued...)

two domestic violence assaults involving Batt were admissible under Alaska Evidence Rule 404(b)(4), which authorizes the admission of evidence of a defendant's other crimes of domestic violence for propensity purposes in a case involving domestic violence. The court also found that the two assaults involving the men were admissible under Alaska Evidence Rule 404(b)(1) to prove Shedlosky's "motive, pattern, and intent" because the assaults occurred as a result of Shedlosky's "feelings of jealousy and suspicion regarding a significant other or a former significant other."

> *Why we conclude that the trial court properly admitted the prior domestic violence assaults and that any error in admitting the two other assaults was harmless*

On appeal, Shedlosky argues that the trial court erred when it allowed the prosecution to introduce evidence of his four prior assault convictions. According to Shedlosky, the trial court failed to conduct an adequate balancing test under *Bingaman v. State*.[3] He argues that the evidence should have been excluded because it was not needed for the State's case, which the court recognized as "strong." Shedlosky also argues that the two prior assaults against the men had no relevance to the current assault involving Batt, although he acknowledges that this objection was not made in the trial court.

In assessing these claims of error, it is necessary to distinguish between the two prior domestic violence assaults against Batt and the two assaults against the two men. Having reviewed the record, we find no error in the trial court's ruling on the prior

---

[2] (...continued)
mistaken about the applicability of Evidence Rules 404(a)(2) and 405(b), we find these errors harmless because the evidence was also separately admitted under Rules 404(b)(1) and 404(b)(4).

[3] *See Bingaman v. State*, 76 P.3d 398, 415-16 (Alaska App. 2003).

domestic violence assaults against Batt. The trial court admitted these assaults under Evidence Rule 404(b)(4), and the court's *Bingaman* analysis of that evidence was sound.

The same cannot be said, however, with regard to the two prior assaults against the men. The trial court ruled that these assaults were admissible under Evidence Rule 404(b)(1) for non-propensity purposes — allegedly, to "establish motive, pattern, intent for this act of violence." But the trial court then proceeded to analyze the admissibility of this evidence under *Bingaman*'s balancing test for character evidence — *i.e.*, evidence that is being admitted, in part, to show propensity. The court's use of the *Bingaman* factors in this manner was error. As we have previously explained, "[b]ecause *Bingaman* is a test for evaluating the admissibility of evidence that is expressly being offered to establish a defendant's character . . . , the *Bingaman* test is an inappropriate legal framework with which to assess the admissibility of evidence under Rule 404(b)(1) — a rule that expressly *prohibits* character evidence.[4]

We recognize that many of the *Bingaman* factors are relevant to the balancing test that courts are required to conduct under Alaska Evidence Rule 403 when considering admission of evidence under Rule 404(b)(1). But the problem remains that the *Bingaman* balancing test was designed for certain cases in which the legislature has specifically authorized the use of propensity evidence, in contravention of the limitations of Rule 404(b)(1).[5] In other words, the *Bingaman* balancing test is premised on the idea that the jury can properly consider a character trait of the defendant for its propensity

---

[4]  *Berezyuk v. State*, 407 P.3d 512, 516 (Alaska App. 2017).

[5]  *See* Alaska Evid. R. 404(b)(2) (authorizing propensity evidence in prosecutions involving a physical or sexual assault or abuse of a minor), (b)(3) (authorizing propensity evidence in sexual assault prosecutions when the defendant relies on a defense of consent), & (b)(4) (authorizing propensity evidence in prosecutions for a crime involving domestic violence or interfering with a report of such a crime).

purposes, whereas the Rule 403 balancing test for 404(b)(1) evidence requires the court to exclude evidence offered under Rule 404(b)(1) if it is likely to be misused as propensity evidence or evidence of the defendant's "character." Thus, a trial court that uses the *Bingaman* factors to evaluate the admissibility of evidence under Evidence Rule 404(b)(1) runs a serious risk of discounting the unfair prejudice that may result from introducing what is supposed to be non-propensity evidence.

At times, we have excused this error as an error of "nomenclature," rather than substance, when "a review of the court's actual analysis indicate[d] that it was engaged in the robust balancing test required for evidence admitted under Evidence Rule 404(b)(1)."[6] But we have also reversed cases where the trial court's erroneous use of the *Bingaman* factors led the prosecutor to argue evidence purportedly admitted for non-propensity purposes as though it had been admitted for propensity purposes.[7]

Here, we are concerned that the court's erroneous use of the *Bingaman* test may have affected the court's ability to fairly assess the probative value of this evidence when weighed against its potential for unfair prejudice. The probative value of this evidence was relatively marginal, given that these were not assaults against domestic partners. Moreover, the chance that the jury might rely on the assaults for propensity

---

[6]   *Rollins v. State*, 2015 WL 4874789, at \*3 (Alaska App. Aug. 12, 2015) (unpublished); *see also Peters v. State*, 2019 WL 1503991, at \*7 (Alaska App. Apr. 3, 2019) (unpublished) (upholding conviction when the "non-propensity purpose of the evidence was clear" and "the trial judge's announced reliance on *Bingaman* was an error of nomenclature rather than substance").

[7]   *See, e.g.*, *Berezyuk*, 407 P.3d at 516-17 (reversing conviction where, despite the prosecutor's claim that evidence of the defendant's prior conviction was admissible for a non-propensity purpose, the record "clearly reveals that the prosecutor's primary use of this evidence was to urge the jurors to improperly view the evidence as character evidence").

purposes was quite high, particularly because the other two domestic violence assaults against Batt *were* being introduced for their propensity value.

We nevertheless conclude that any error in admitting the assaults against the men was harmless, given the larger context of this case.[8] As Shedlosky admits in his briefing on appeal, the State's case against him was strong. And his claim of self-defense was particularly weak. During closing argument, the prosecutor focused on the strength of its case, emphasizing Batt's injuries, Shedlosky's lack of injury, and the direct eyewitness testimony of Rhodes. The prosecutor referred to the four assaults in her closing, but she primarily emphasized the more relevant assaults — that is, the prior domestic violence assaults against Batt, which were properly admitted for propensity purposes under Evidence Rule 404(b)(4). The presentation of evidence on the non-domestic violence assaults was minimal and not overly inflammatory.

Given all this, we conclude that it can fairly be said that any error in admitting these additional non-domestic violence assaults was ultimately harmless and did not appreciably affect the jury's verdict.

### Why we affirm Shedlosky's sentence

Shedlosky faced a presumptive range of 2 to 5 years for his third-degree assault conviction.[9] He stipulated to two aggravating factors — that his prior history included repeated instances of assaultive behavior and that he was on probation for

---

[8] *See Love v. State*, 457 P.2d 622 (Alaska 1969) (holding that an erroneous evidentiary ruling is harmless when it can fairly be said that the error did not appreciably affect the jury's verdict).

[9] *See* former AS 12.55.125(e)(3) (2017).

another felony at the time of the offense.[10]  And Shedlosky asked the court to find the mitigating factor that his conduct was among the least serious within the definition of the offense, arguing that what he really committed was fourth-degree assault because his third-degree assault conviction resulted from his prior assault convictions.[11]

The trial court rejected Shedlosky's proposed mitigator.  In its sentencing remarks, the court found that when Shedlosky drinks, he becomes "a violent, angry person with no judgment or discernment."  The court noted that this "has happened time and time and time again" and, as a result, Shedlosky had at least ten prior assault convictions — *i.e.*, eight more than required for the recidivist statute.  Ultimately, the court sentenced Shedlosky to 5 years to serve with no suspended time.

On appeal, Shedlosky renews his argument that his conduct was among the least serious conduct constituting the offense because the crime he actually committed was fourth-degree assault.  In other words, Shedlosky essentially argues that every recidivist third-degree assault conviction is *per se* least serious.

This argument is contrary to our cases holding that when "the legislature includes various acts within the definition of the same offense, . . . each act must presumptively be regarded as equally serious."[12]  Accordingly, we find no error in the trial court's decision that Shedlosky's conduct in this case was not least serious.[13]

---

[10]  *See* AS 12.55.155(c)(8), (20).

[11]  *See* AS 12.55.155(d)(9).

[12]  *Simpson v. State*, 796 P.2d 840, 843 (Alaska App. 1990); *see Walsh v. State*, 677 P.2d 912, 917 (Alaska App. 1984); *Juneby v. State*, 641 P.2d 823, 841 (Alaska App. 1982), *modified on other grounds*, 665 P.2d 30 (Alaska App. 1983).

[13]  *See Aveoganna v. State*, 757 P.2d 75, 77 (Alaska App. 1988) (rejecting defendant's contention that his offense automatically qualifies as least serious in comparison to other

(continued...)

Shedlosky also argues that his sentence is excessive. When we review an excessive sentence claim, we independently examine the record to determine whether the sentence is clearly mistaken.[14] The "clearly mistaken" standard contemplates that different reasonable judges, confronted with identical facts, will differ on what constitutes an appropriate sentence, and that a reviewing court will not modify a sentence that falls within a permissible range of reasonable sentences.[15] We have independently reviewed the sentencing record in this case and conclude that the sentence imposed here is not clearly mistaken.

*Why we affirm the revocation of Shedlosky's probation*

After Shedlosky was convicted and sentenced, a disposition hearing was held on the State's petition to revoke Shedlosky's probation. The State based its petition to revoke on two allegations — that Shedlosky had been convicted of third-degree assault and that he had consumed alcohol. The judge found both allegations proven and imposed 6 months of previously suspended time.

On appeal, Shedlosky argues that this decision should be reversed because his conviction for assaulting Batt was invalid due to the improper admission of prior bad acts evidence. Because we affirm Shedlosky's conviction, we find no merit to this argument.

---

[13] (...continued)
offenses with the same applicable presumptive sentencing term because the mitigating factor compares the defendant's conduct in committing the offense with the conduct of others committing the same offense).

[14] *See McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974).

[15] *See Erickson v. State*, 950 P.2d 580, 586 (Alaska App. 1997).

Shedlosky also argues that the State presented insufficient evidence that he consumed alcohol. We have reviewed the testimony presented at Shedlosky's probation revocation hearing, and we find no merit to this argument.

*Conclusion*

For the reasons expressed in this opinion, we AFFIRM both judgments in this consolidated appeal.

2673